McCoy v. Payne.

DECEDENTS' ESTATES.—*Executor De Son Tort.*— *Widow.*— *Will.*— *Conversion.*—Where a husband, by his last will, devises and bequeaths all his estate, real and personal, to his widow, and such widow, without probating said will in the proper court and without administration of the said estate, takes possession of and converts to her own use all said estate, she becomes an executrix *de son tort* and is chargeable as such.

SAME.— *Creditor.*—Under section 15 of the decedents' estates act, 2 R. S. 1876, p. 495, the creditor of a decedent is not authorized to maintain a personal action, or recover a personal judgment, against an executor *de son tort* of such decedent's estate. The liability of such an executor is not to the creditor, but to the decedent's estate and his personal representatives ; and, although the creditor may sue such an executor, he can not recover a personal judgment for his debt against him, but can only compel him to account to the proper court for the full value of the decedent's property, with which he has unlawfully intermeddled, with ten per centum thereon.

SAME.—*Collection of Claim against Estate.*—Under the law of this State the creditor of a decedent can collect his claim against the decedent's estate, by and through an administration thereof, and in no other way, where his claim is not secured by a mortgage or specific lien on particular property ; and, without such administration, he can not recover his claim from the widow, heirs, devisees or legatees, or even from an executor *de son tort.*

SAME —*Joint Promissory Note.*—*Surety.*— *Contract.*—*Actions that Survive.*— Under the provisions of sections 782 and 783 of the practice act, 2 R. S. 1876, p. 309, all causes of action founded on contract, except in the case of a promise to marry, survive in this State, and may be brought by or against the representatives of the deceased party; therefore, upon the death of one who had signed as surety only a joint, but not several, promissory note, the estate of such deceased surety will not be discharged from liability on such note, but the cause of action thereon survives against the personal representatives of such surety.

From the Johnson Circuit Court.

*T. W. Woollen*, for appellant.

*S. P. Oyler*, for appellee.

HOWK, C. J.—In this action the appellee, as plaintiff, sued the appellant and one William H. Taggart, as defendants, upon a promissory note, of which the following is a copy :

"$1,000.00. FRANKLIN, Aug. 7th, 1874.

"Twelve months after date we promise to pay to the order of William H. McCoy one thousand dollars, with in-

terest at the rate of ten per cent. per annum, value received, without any relief whatever from valuation or appraisement laws.   If this note be collected by suit, the judgment shall include a reasonable fee of plaintiff's attorney, and shall bear ten per cent. interest.

(Signed.)                                "W. H. TAGGART,
                                         "LEWIS McCoy."

Endorsed:  "W. H. McCoy."

The appellee's complaint contained four paragraphs, to each of which the appellant separately demurred, upon the ground that it did not state facts sufficient to constitute a cause of action against her, which demurrers were separately overruled by the court, and to each of these decisions she excepted.   The appellant and her codefendant, Taggart, jointly answered by a general denial of the complaint, and the appellant separately answered in a single paragraph, setting up special or affirmative matters by way of defence.   To the separate paragraph of the appellants' answer, the appellee's demurrer, for the alleged insufficiency of the facts therein, was sustained by the court, and to this decision the appellant excepted.   The cause was put at issue as to the defendant William H. Taggart, by his separate special answer, and the appellee's reply in denial.

The cause was tried by the court and a finding was made for the appellee in the sum of one thousand and eighty-seven dollars and thirty-five cents, of which forty-six dollars and forty-one cents was an attorney's fee, and that the same should bear interest at the rate of ten per cent. per annum until paid; and that the defendant Taggart had been adjudged a bankrupt, and the proceedings in bankruptcy were still pending against him in the District Court of the United States for the district of Indiana.

The appellant separately moved the court for a new trial, which motion was overruled by the court, and to this rul-

ing she excepted. The court then rendered judgment in favor of the appellee and against the appellant, for the amount found due on the note in suit, with costs, and with interest at the rate of ten per cent. per annum until paid, etc.; and that, as to the defendant Taggart, all proceedings in this cause should be stayed until he should have a reasonable time to procure his discharge in bankruptcy.

In this court, the following decisions of the circuit court have been assigned by the appellant as errors :

1. In overruling her demurrers to each of the paragraphs of appellee's complaint;

2. In sustaining appellee's demurrer to the appellant's separate answer ; and,

3. In overruling the appellant's motion for a new trial.

We will consider and decide the questions, presented by these several alleged errors, in the order of their assignment.

1. In each of the four paragraphs of the appellee's complaint, it is first alleged, in substance, that on the 7th day of August, 1874, the defendant Taggart, and one Lewis McCoy, then in life and the husband of the appellant, Rebecca McCoy, made and delivered to one William H. McCoy their promissory note, a copy of which was filed therewith, (and is set out in this opinion,) by which they promised to pay to the order of said William H. McCoy, twelve months after the date thereof, one thousand dollars, etc., and that the said William H. McCoy assigned and transferred said note to the appellee by endorsement thereon in writing, a copy of which was herewith filed, (and is set out above.)

In the first paragraph of said complaint, it was further alleged, in substance, that afterward, on the —— day of ——, 1874, the said Lewis McCoy departed this life testate, at said Johnson county, Indiana, and that, by the

terms of his last will and testament, all of said decedent's property, real and personal, was devised to the appellant Rebecca McCoy, his widow; that the appellant retained the said will in her possession, and failed and refused to have the same proven and admitted to probate, according to law, and therefore the appellee could not file a copy of said will with his complaint; that all the provisions of said will were well known to the appellant, and 'that she, as executrix *de son tort* and without any administration of the estate of said Lewis McCoy, deceased, had taken possession of, and had converted to her own use, all the said estate of said decedent, of the value of ten thousand dollars, and still had and held said estate. . There is no substantial difference in the allegations of 'either the second, third or fourth paragraphs of the complaint from those of the first paragraph, the substance of which we have given, except that the second paragraph contains an additional allegation, to the effect that said William H. Taggart had been adjudged a bankrupt by the District Court of the United States for the district of Indiana, and was notoriously insolvent, and except, also, that, in the third paragraph, the defendant Taggart is described as surety, and the decedent, Lewis McCoy, as principal, in the note in suit; while, in the fourth paragraph, it was alleged that Taggart, as principal, and the decedent, McCoy, as surety, executed said note. In each of the paragraphs it was alleged that the note in suit was due and unpaid.

It seems to us that the court erred in overruling the appellant's demurrers to each of the paragraphs of the appellee's complaint. In so far as the appellant is concerned, it is not claimed in either paragraph of the complaint, that she was a party to the note in suit; and, indeed, the note itself showed that she was not liable thereon in any capacity, in any manner or to any extent. In each paragraph of his complaint, the appellee has evidently sued the appel-

lant upon the mistaken idea or theory that she had, in some manner, become personally and individually liable to him in person on the note he held against her deceased husband. The appellee's note, made by Lewis McCoy, certainly did not constitute a cause of action against the widow as such, or as devisee, legatee or heir at law of Lewis McCoy, deceased, in appellee's favor. If the appellee's cause of action against said Lewis McCoy, evidenced by his note, survived his death and did not die with his person, it is certain, we think, that it only survived as against his personal representatives. Yet the appellee has sued the appellant in this action upon the note of her deceased husband, Lewis McCoy, as if his cause of action had survived against the appellant as the decedent's widow, and had become her personal debt and promise to the appellee; and the finding and judgment in appellee's favor, and against the appellant, show very clearly that the court adopted and acted upon the same erroneous views of the appellee's rights, and the appellee's liabilities, on the note of Lewis McCoy, now in suit.

It was alleged by appellee in his complaint, that the said Lewis McCoy had, by his last will, devised and bequeathed all his estate, real and personal, of the alleged value of ten thousand dollars, to the appellant, Rebecca McCoy, his widow, and that, without probating said will in the proper court, and without administration of the estate of said Lewis McCoy, deceased, the appellant, his widow, devisee and legatee, had taken possession of, and had converted to her own use, all the said estate of the said decedent. Conceding the truth of these allegations, the appellant had become and was chargeable as an executrix *de son tort* of the estate of her deceased husband, Lewis McCoy. In section 15 of "An act providing for the settlement of decedents' estates," etc., approved June 17th, 1852, it is provided as follows:

"SEC. 15. Every person who shall unlawfully inter-
meddle with any of the property of a decedent, shall be
chargeable as an executor of his own wrong, and shall be
liable to an action in the court of common pleas, or any
other court of competent jurisdiction, by any creditor or
other person interested in the estate of the decedent, to
the extent of the damages occasioned thereby, and shall
account for the full value of such property, with ten per
centum thereon, and may be examined under oath touch-
ing such intermeddling, and testimony thus elicited shall
not be thereafter used against him in any prosecution; and
such person may also be attached and imprisoned in the
discretion of the court, until its orders in the premises are
complied with; and no debt due such executor from the
decedent shall be deducted from the value of any such
property." 2 R. S. 1876, p. 495.

This section of the statute, as we construe its provisions,
does not authorize the creditor of a decedent to maintain
a personal action, or recover a personal judgment, against
an executor *de son tort* of such decedent's estate. When-
ever any person shall unlawfully intermeddle with any
property of a decedent, "any creditor or other person in-
terested in the estate of the decedent" may commence an
action in the proper court against such intermeddler, not
to recover a personal judgment, but to compel such execu-
tor of his own wrong to account to such court for the full
value of the decedent's property he has unlawfully inter-
meddled with, and "ten per centum thereon." Such
executor *de son tort* is made chargeable with the decedent's
property, with which he has unlawfully intermeddled;
and, for such unlawful intermeddling, he is made liable "to
the extent of the damages occasioned thereby, and shall
account for the full value of such property, with ten per
centum thereon." The liability of such an executor is not
to the decedent's creditor, but to the decedent's estate and

his personal representatives; and, although the creditor may sue such an executor, he can not recover a personal judgment for his debt against the executor, but can only compel him to account for the full value of the decedent's property, with which he has unlawfully intermeddled, " with ten per centum thereon." Under the law of this State, the creditor of a decedent can collect his claim against the decedent's estate, by and through an administration of such estate, and in no other way or manner, where his claim is not secured by a mortgage or specific lien on particular property; and, without such administration, he can not recover his claim from the widow, heirs, devisees or legatees, or even from an executor *de son tort.* *The North-Western Conference of Universalists* v. *Myers,* 36 Ind. 375; *Wilson* v. *Davis,* 37 Ind. 141; *Leonard* v. *Blair,* 59 Ind. 510; *Langford* v. *Freeman,* 60 Ind. 46; and *Allen* v. *Vestal,* 60 Ind. 245.

For the reasons given, we are of the opinion that neither paragraph of the complaint stated a cause of action in appellee's favor and against the appellant, and that her demurrers thereto, each and all, ought to have been sustained.

2. In her separate paragraph of answer, the appellant alleged, in substance, by way of answer to the first and second paragraphs of the complaint, that she admitted the execution of the note in suit, and that it was unpaid except the amount credited thereon; but she said that she ought not to be held liable to pay said note, because she said that the note was given for part of the consideration of the sale by one Robert A. Alexander to her codefendant, William H. Taggart, of a stock or interest therein of hardware, which the said Taggart had purchased of said Alexander; that the said Taggart received all the consideration for said note, and that none thereof enured to the benefit of her deceased husband, Lewis McCoy; that said William H. Tag-

gart signed said note as principal, and her said husband, Lewis McCoy, signed the same only as surety for the said William H. Taggart; that said note is a joint obligation, and that her said husband departed this life, as alleged in the first two paragraphs of appellee's complaint. Wherefore the appellant said that the estate of her deceased husband was discharged from the debt, evidenced by the note in suit, both at law and in equity, and she demanded judgment accordingly.

This paragraph of answer presents for our decision the question, whether or not, under the law of this State, upon the death of one who had signed as surety only a joint, but not several, promissory note, the estate of such deceased surety would be discharged on his death from any and all liability on such note. In other words, it seems to us, the question for decision may be thus stated: Did the cause of action which the appellee, as the holder of the note in suit, would have had beyond all doubt against the said Lewis McCoy, as surety on said note, if he had been living at the maturity of the note, survive against the personal representatives of said McCoy after his death? Probably these questions were also presented for our decision by the alleged error of the court, in overruling the appellant's demurrer to the fourth paragraph of appellee's complaint; but, if so, they are certainly presented more clearly and fully, and freer from all "entangling alliances," in the special paragraph of the appellant's answer and the ruling of the court thereon, and, therefore, we have deferred the decision of these questions until we came to consider and pass upon the sufficiency in law of the defence stated in said special paragraph.

It may be conceded that the law was, and still is, unless changed or modified by statutory provisions, that the estate of a surety bound jointly, but not severally, with his principal, upon a promissory note or other written con-

tract, is absolutely discharged from all liability on such note or contract upon his death, and the survivor or survivors are alone responsible thereon. *Getty* v. *Binsse*, 49. N. Y. 385; *Wood* v. *Fisk*, 63 N. Y. 245; *The United States* v. *Price*, 9 How. 83; *Pickersgill* v. *Lahens*, 15 Wal. 140; and *Fielden* v. *Lahens*, 6 Blatchf. 524. It seems to us, however, that the law as thus stated has been completely changed by legislative enactments in this State. In the case of *Getty* v. *Binsse*, *supra*, the law as it existed, unless changed by statute, is thus stated: "It is a well settled principle that, in case of a joint obligation, if one of the obligors die, his representatives are, at law, discharged, and the survivor alone can be sued." It is certain, we think, that this principle has not been the law in this State for many years; for, in section 70 of "An act providing for the settlement of decedents' estates," etc., approved June 17th, 1852, which section has never been repealed or amended, it was and is provided that "When two or more persons are bound in any joint contract, or in a judgment founded thereon, and either of them shall die, the proportionable part of such contract may be allowed against his estate." 2 R. S. 1876, p. 518.

There is more of this section 70 than what we have quoted, but the remainder of it constitutes an exception to what precedes it; and, therefore, what we have already quoted may properly be regarded as the general rule, under the statute, applicable in all cases where one of two or more persons, bound in a joint contract, or in a judgment founded thereon, shall die, unless the case falls within the single exception contained in said section of the statute. This exception reads as follows: " Except where the relation of principal and surety exists, and in that case, if the decedent be the principal, the whole of such contract shall be allowed against such estate." In the case now before us, under the allegations of the appellant's special answer,

the relation of principal and surety existed between the joint makers of the note in suit; and, therefore, this case came within the exception contained in said section 70, and the general rule, above referred to, was not applicable thereto. But, in this case, under the averments of said answer, the decedent was not the principal, but the surety, in the note sued on; and, therefore, the exception in said section 7 failed to provide what should be done in such a case as the one now before us. If the decedents' estates act contained the statutory law of this State, applicable to the case at bar as made by the averments of the appellant's special answer, we would be bound to conclude that the case was governed by the common-law rule, as above stated, and that the estate of said Lewis McCoy, the deceased surety in the joint note sued on, had been and was, upon his death, absolutely discharged from all liability on said note, both at law and in equity.

It seems to us, however, that the practice act or code of practice, approved June 18th, 1852, which is a later law than the act providing for the settlement of decedents' estates, contains certain provisions which are utterly inconsistent, and can not be reconciled, with the said common-law rule on the subject under consideration. The common law of England is and always has been a part of the law governing this State, where the common law was not inconsistent with the fundamental law of either the United States or this State, or with the statutes of this State, or the acts of Congress of the United States. Whenever such inconsistency exists, the common law is superseded, and, to the extent of such inconsistency, is no longer any part of the law of this State.

In the case now before us it can not be questioned, as it seems to us, that, if Lewis McCoy had been living at the time of the maturity and non-payment of the note in suit, it would have constituted a good cause of action against

him, whether he had been principal, surety, or merely a joint maker of such note, in favor of the appellee as the holder thereof. If, in that case, the appellee would have had a valid cause of action on the note against Lewis McCoy, if living, then it is certain, we think, that, upon the death of said Lewis McCoy, the cause of action against him did not die with his person, but such cause of action, under the provisions of the practice act in such cases, survived against his personal representatives. Sections 782 and 783 of the practice act contain the following provisions in relation to "causes of action that survive," namely :

"Sec. 782. A cause of action arising out of an injury to the person, dies with the person of either party, except in cases in which an action is given for an injury causing the death of any person, and actions for seduction and false imprisonment.

"Sec. 783. All other causes of action survive, and may be brought by or against the representatives of the deceased party, except actions for promises to marry." 2 R. S. 1876, p. 309.

Under these sections of the practice act, all causes of action founded on contract, except in the single case of a promise to marry, survive in this State, "and may be brought by or against the representatives of the deceased party." So the law is written, and so, we think, it ought to be construed. The General Assembly of this State have the unquestioned and unquestionable right and power to determine and declare, by legislative enactment, what causes of action shall die with the person of the party, and what causes of action shall survive the death of the party, and, in the event of survivorship, by and against whom the action shall be brought. In the sections last quoted of the practice act, the General Assembly of this State, in the exercise of their right and power, have determined and declared that all causes of action founded on contract, with a.

single exception, shall survive, "and may be brought by or against the representatives of the deceased party." In the case at bar the cause of action stated in appellee's complaint was founded on contract, and did not fall within the single exception, and, therefore, it follows clearly and conclusively, as it seems to us, that the appellee's cause of action did survive the death of said Lewis McCoy, and that his action might have been, and ought to have been, brought thereon against the personal representatives of said Lewis McCoy, deceased.

The court did not err, we think, in sustaining the demurrer to the special answer of the appellant, for the answer was insufficient; but, as the demurrer "searched the record," it ought to have been carried back and sustained to the appellee's complaint.

3. The third alleged error of the court, namely, the overruling of the appellant's motion for a new trial, presents substantially the same questions as were presented by the ruling of the court on the appellant's special answer. We have fully considered and passed upon these questions in discussing the insufficiency of that answer.

The judgment is reversed, at the appellee's costs, and the cause is remanded with instructions to sustain the appellant's demurrers to each paragraph of the appellee's complaint.