THE STATE v. JOSEPH W. WAGNER, Appellant.

Division Two, December 22, 1925.

1. **LARCENY: Automobile: Identification.** The evidence produced by the State in this case, upon the principal issue whether the automobile which it is charged defendant stole was the one afterwards found in his possession, is set out at length, and, *Held*, sufficient to authorize the submission of that question to the jury.

2. ————: **Possession of Recently Stolen Automobile.** Possession by defendant of a stolen automobile recently after it was stolen is a fact which authorizes the jury to find that he was the thief thereof, if they deem his possession not sufficiently accounted for by him.

3. **CHANGE OF VENUE: Prejudice of Two Judges.** By filing an affidavit charging bias and prejudice on the part both of the trial

State v. Wagner.

judge of the division in which his case is pending and of the judge of another division of the same circuit court, a defendant cannot disqualify and destroy the jurisdiction of the judge of the latter division to whom the case is sent by the judge in whose division the application for a change of venue is filed. Under Section 3911, Revised Statutes 1919, and the Act of 1921, Laws 1921, page 220, a defendant is allowed only one change of venue on account of the prejudice and bias of the trial judge, and a change granted on account of the bias and prejudice of one trial judge precludes a second application based on the prejudice of the trial judge to whom the judge first disqualified sends the case.

4. **CHANGE OF VENUE**: Prejudice of Two Judges: Section 2682. Section 2682, Revised Statutes 1919, providing for the Criminal Court of Jackson County, to be composed of two divisions, and declaring that "if application for a change of venue in any division of said court shall be made against more than one judge thereof, the judge before whom the same shall be made shall determine whether or not the facts exist as charged against the other judge," is inconsistent with Section 9 of the Act of 1921 (Laws 1921, p. 222) abolishing said criminal court and vesting jurisdiction of criminal cases in the circuit court and declaring that "changes of venue shall be allowed from said court in any criminal case pending therein, for any cause for which such changes are or may be allowed from other courts of this State having criminal jurisdiction, but whenever such changes are asked on the grounds of prejudice or other legal objections to any other judge thereof who may have been assigned for the trial of such cases, no change shall be awarded, but the case shall be transferred to another division to which the trial and disposition of criminal cases may have been allotted by the court," and is to be regarded as repealed by said later act; and if not so regarded, an application filed in the division in which the case is pending should be denied, in so far as it seeks to disqualify the judge of another division, where no showing is made of facts disqualifying the judge of such other division.

5. **EVIDENCE**: Larceny: Automobile: Records of Sale and Manufacture. In the prosecution of a defendant for the larceny of an automobile, the original order of sale, and record entries of the sale and manufacture of the automobile, showing the number stamped on the motor, on the transmission, on the generating housing and on the body of the automobile, and the name of the purchaser, regular on their face, and identified, by the chief clerk of the sales department of the manufacturer, as having been made and kept in the regular and orderly course of business and made at the time the sale was made, though such entries were not made by the witness so identifying them, are competent and admissible in evidence,

State v. Wagner.

and particularly so where such records are kept and produced by persons wholly disinterested in the prosecution.

6. ———: ———: ———: ———: **Made by Another: Inadequacy of Old Rule: Best Evidence.** The best and only proof obtainable is always admissible. The former rule that in order for record entries of sales to be admissible in evidence they must be made by the witness producing them, or under his immediate observation and direction, or be identified as made in the handwriting of an employee in the ordinary course of business, is utterly inadequate and inapplicable to record entries of the sales of a company which makes and markets many thousands of automobiles annually and employs many clerks. But if the original entries are shown to have been made by employees of the company contemporaneously with the sales and in the ordinary course of business, though the names of such employees or their handwriting are not known, and there is no showing that they were falsely made or made for an improper purpose, they are competent evidence in the trial of a defendant who is charged with stealing one such automobile from its purchaser, and particularly so where they are produced by a wholly disinterested witness in charge of the sales department of the manufacturer, for the purpose of identifying the machine stolen as one made by the company whose name it bears.

7. ———: **General Objection: Conclusion.** The abandonment of a question by the prosecuting attorney when there is an objection that it calls for a conclusion, and the asking of another question which is not leading, to which the objection is that it is improper, raises nothing for review on appeal.

8. **CROSS-EXAMINATION: Discretion: Suspicion: Conclusion: Interest of Witness.** The range and character of the cross-examination of a witness is largely within the discretion of the trial judge, and that discretion was not abused where the question was evidently asked for the purpose of showing the interest, disposition or bias of the witness, who seemingly was willing to testify to anything to help defendant. An objection to an inquiry of a witness upon cross-examination if a certain fact aroused his suspicion that it called for a conclusion, will not be held erroneous on any such ground where the fact would have aroused suspicion in men of ordinary intelligence, and the witness answered that it did not arouse his suspicion.

9. ———: **No Proffer.** Assignments of error in excluding alleged proper testimony is not for review where appellant makes no offer of proof. Where the trial court refused to permit a witness to testify whether the motor number on an automobile, which defendant claimed he had bought in good faith, appeared to have been

tampered with or changed, on the ground that the automobile which witness examined had not been sufficiently shown to have been the automobile in question, such refusal is not for review on appeal where defendant made no offer of proof showing what he expected the testimony of the witness to be.

10. **EVIDENCE: Obtained by Unlawful Search.** In the absence of a motion to suppress evidence obtained by an alleged unlawful search, without a search warrant, an objection thereto that search violated defendant's constitutional rights and is inadmissible, is not available if made for the first time when such evidence is offered during the progress of the trial.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 302, p. 202, n. 32; Section 319, p. 211, n. 48; Section 1110, p. 571, n. 94; Section 1527, n. 743, n. 80; Section 2151, p. 851, n. 69; Section 2199, p. 877, n. 28; Section 2506, p. 1063, n. 85; 17 C. J., Section 3331, p. 58, n. 20; Section 3335, p. 68, n. 34; Section 3336, p. 71, n. 47; Section 3593, p. 255, n. 52, 53. Judges, 33 C. J., Section 199, p. 1021, n. 37 New. Larceny, 36 C. J., Section 433, p. 874, n. 9; Section 524, p. 920, n. 50; Section 528, p. 921, n. 58. Witnesses, 40 Cyc., p. 2426, n. 24; Section 2481, p. 64; p. 2489, n. 97; p. 2512, n. 43; p. 2513, n. 44, 45, 46.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*Anthony P. Nugent* for appellant; *Clarence Wofford* and *Bert S. Kimbrell* of counsel.

(1) The application and motion of the defendant for a change of venue, based upon the bias and prejudice of Hon. Edward E. Porterfield, judge of Division 7 of the circuit court, duly verified and supported by affidavits, being duly filed and of record in said cause and called to the attention of the court, the Hon. Edward E. Porterfield was without power, authority or jurisdiction to proceed with the trial of said cause, and all proceedings thereafter were null and void. Sec. 3991, R. S. 1919; State v. Spivey, 191 Mo. 87; State v. Witherspoon, 231 Mo. 706; In re Howell and Ewing, 273 Mo. 96; State v. Jones, 268 S. W. 83; 16 C. J. 203, sec. 306. (2) The court erred in admitting in evidence, State's Exhibits 12, 13, 14, 15 and 16, and each of them, for the reasons that said exhibits were not properly identified, were not

shown to be accurate or correct, were not shown to have been made contemporaneously with transactions recited therein, no proper basis or foundation was laid for their introduction, were but written hearsay and the persons, who made them and who could have testified concerning them as to their accuracy and correctness, were not called as witnesses.  Connell v. Haase & Sons Fish Co., 302 Mo. 89; State v. Kleine, 263 S. W. 117; Ridenour v. Wilcox Miles Co., 164 Mo. App. 597; Mann v. Sand Co., 211 Mo. App. 261; Rodeman v. Smith, 211 Mo. App. 701; Jungkind Photo Supply Co. v. Yates, 257 S. W. 822; Security Printing Co. v. Ins. Co., 263 S. W. 457; Reineke v. United States, 278 Fed. 724; Crowell Brothers v. Grain Co., 271 Fed. 134; Granzow v. United States, 261 Fed. 173; Bockelcamp v. Railroad, 232 Pa. 66; Chicago Lumbering Co. v. Hewitt, 64 Fed. 314; Chaffee & Co. v. United States, 18 Wall. 541; 10 R. C. L. 1174, sec. 373.  (3)  The court erred in permitting the special prosecutor to propound to James Orford, a witness for the State, these questions, and in permitting Orford to make answer to said questions.  State v. Perry, 267 S. W. 828; State v. Hewitt, 259 S. W. 773; State v. Nave, 283 Mo. 35; State v. Bowman, 278 Mo. 492.  (4)  The record showing, without contradiction or dispute, that James Orford, a witness for the State, entered the garage at the home of the defendant without a search warrant, without authority of law, and in violation of defendant's rights under the Fourth and Fifth Amendments to the Constitution of the United States and under Sections 11 and 23 of Article 2 of the Constitution of Missouri, and seized and took from said garage the automobile of the defendant, the court erred in receiving the testimony of said James Orford relative to said automobile and other matters, and erred in overruling the motion of the defendant to exclude the testimony of said James Orford relative to said automobile and other matters, the unconstitutional character of the search and seizure appearing from the testimony without contradiction or dispute. Salata v. United States, 286 Fed. 125; Gouled v. United

States, 255 U. S. 298, 312; Amos v. United States, 255 U. S. 312.

*Robert W. Otto,* Attorney-General, and *Harry L. Thomas,* Special Assistant Attorney-General, for respondent.

(1) The application for a change of venue was properly denied. Changes of venue in the Circuit Court of Jackson County are governed by special statute. State ex rel. v. Fort, 210 Mo. 537; Laws 1921, sec. 9, p. 222. Changes of venue asked on grounds of prejudice of any of the judges thereof shall cause the case to be transferred to another division of the court to which the trial and disposition of criminal cases may have been allotted by the court. Laws of 1921, sec. 9, p. 222. The record shows that the statute has been followed. A change having been applied for and granted for the same reason before another judge of this court, a second change is not allowable. State v. Calloway, 154 Mo. 96; State v. Anderson, 96 Mo. 247; State v. Greenwade, 72 Mo. 298. The right to a change of venue is statutory and it is competent for the Legislature to provide the terms upon which it shall be granted. State v. Witherspoon, 231 Mo. 706. Absent constitutional barriers, where a general and a specific statute contains different provisions covering the same subject-matter, the specific statute will prevail as constituting an exception to the one of general application. The rule obtains regardless of the priority of the enactments. State ex rel. v. Fort, 210 Mo. 537; Hurlbut v. Bush, 224 S. W. 323; Folk v. St. Louis, 250 Mo. 116; State ex rel. v. Drain. Dist., 284 Mo. 655. (2) Exhibits 12, 13, 14, 15 and 16, as against this objection made, were properly admitted in evidence. Records, fair on the face and shown to have been kept in the regular course of business, are admissible when properly identified. Anchor Milling Co. v. Walsh, 108 Mo. 285; Lyons v. Corder, 253 Mo. 539; Rodeman v. Smith, 211 Mo. App. 694. (3) The evidence of Officer Orford was

properly admitted.  The admissibility of this evidence rests upon whether the search was reasonable and not upon the presence or absence of a search warrant.  The court will not pause to consider the collateral question of reasonableness.  State v. Owens, 259 S. W. 100.  (4) There being substantial evidence of appellant's guilt the demurrer at the conclusion of all the evidence was properly overruled.  State v. Wagner, 252 S. W. 695.

BLAIR, J.—The defendant was convicted in the Circuit Court of Jackson County of the crime of grand larceny for stealing a Cadillac automobile.  The jury assessed his punishment at eight years' imprisonment in the penitentiary.  From the judgment entered upon such verdict, defendant has appealed.  This is the second appeal.  A trial was had in the year 1922, which resulted in the conviction of the defendant.  Upon appeal said judgment was reversed and the cause remanded.  That proceeding is reported in 252 S. W. 695.  The opinion in that case contains a detailed statement of the facts.  In the last trial testimony was offered tending to prove all the facts stated by Judge RAILEY in that opinion and reference is made thereto for facts not herein stated.

The undisputed facts in the case are that, on and prior to November 24, 1920, Mrs. C. J. Shannon was the owner of a 1920 model 59, Cadillac, seven-passenger touring automobile.  On that evening, about eight o'clock, she and her son, Frank Shannon, drove said automobile to the residence of a friend in Kansas City and about two hours afterwards they discovered that the automobile was gone.

About January 1, 1921, defendant had in his possession a Cadillac, seven-passenger, touring automobile of the same year and model.  The main controversy of fact in the case is whether or not the automobile belonging to Mrs. Shannon, which we will hereafter refer to as the Shannon automobile, was the same automobile as the one afterward found in the possession of the defendant.  We will refer to the latter as the Wagner automobile.

The testimony of the State tended to show that Joseph Shannon purchased a Cadillac automobile from the Greenlease Motor Company of Kansas City about the middle of September, 1920, as a present for his wife, who was then abroad with their son and daughter. They returned about November 1st or 2nd, 1920, and Mr. Shannon met them at the station with the new automobile. This was a night or two after Halloween. On that night Mr. Shannon had been using the automobile, and some person had made a large figure 8 upon the right side of the cowl with what appeared to be soap. This mark was evidently a permanent one, because all efforts to remove it entirely failed and it could thereafter always be seen when a person placed himself in a certain angle and looked for it. It apparently dimmed the luster in such a way that it could be found when looking for it and yet did not show itself to the causal observer. While the Shannons had the automobile a crack developed in the condenser tank and this crack was repaired by solder. The testimony of the State tended to show that a similar figure 8 and similarly soldered condenser tank were found on the Wagner antomobile.

Immediately after the automobile was missing, Mrs. Shannon called the police station and reported its loss. Neither Mrs. Shannon nor any member of the family could give any accurate description of the automobile, except its model and size. None of them thought to report to the police the presence of the figure 8 marring the cowl. The numbers stamped upon the motor, the transmission, the generating housing and the body of the automobile were obtained from either the factory or the local agency of the Cadillac company. These numbers were as follows: Body, 33236; motor, 59-M-677; generator, 162-14309; Transmission, 11683.

It appears that defendant's possession of the Wagner automobile was an object of suspicion to the police for reasons not appearing in the record. Early in January officers visited defendant and inspected his

automobile and asked him to bring it to the police station. It was taken to the garage which housed automobiles for the authorities and remained there approximately ten days, during which time a number of police officers and insurance inspectors examined it. The Wagner automobile then bore the following numbers: Motor, 59-E-399; generator 162-14818; transmission, 11688.

It does not appear that the police connected the Wagner automobile with the stolen Shannon automobile and none of the Shannon family were asked to attempt to identify it at that time. An insurance company carried a fire-and-theft policy upon the Shannon automobile and the activities of its agents in seeking to find the Shannon automobile, and later to connect the automobile taken from the defendant with the stolen automobile, appear in the record.

Early in February following four police officers came to the residence of defendant while no one was at home, forcibly opened the garage and took the Wagner automobile out of defendant's possession. It was again held for observation for a period. At that time it was shown to Mr. Shannon and members of his family and they testified that they observed the figure 8 upon the right side of the cowl. Thereafter, and before the first trial, the condenser tank was removed from the Wagner automobile and replaced by another and said tank was in evidence before the jury at both trials.

Some mention of a replevin suit appears in the record, but the parties to it and the result of the suit are not shown. Apparently defendant sought to replevin the automobile from the garage which held it for the police or the insurance company. However that may be, the Shannons refused to take back the automobile because of the damage which had been done to it and the insurance company paid the loss in full and took the Wagner automobile and sold it to a merchant in Kansas City, Kansas, who brought it to the court house in Jackson County, Missouri, at both trials.

As above stated, the chief controversy of fact is whether or not the Shannon automobile and the Wagner automobile were one and the same automobile. That the Wagner automobile was stolen is not disputed. The records of the Cadillac Motor Company of Detroit, Michigan, were brought into court by one of the employees of that company. He produced Exhibits 12, 13, 14, 15 and 16. Exhibit 13 was the factory record of the shipment of a Victoria Cadillac automobile to the city of New York. The transmission number on that automobile was 11688. This was the number found on the transmission of the Wagner automobile. Exhibit No. 14 was the factory record of an automobile shipped to Dallas, Texas. The motor number of that automobile was 59-E-329. This was the number found upon the Wagner automobile. Exhibit 15 was the factory record of an automobile shipped to White River Junction, Vermont. The generator number of that automobile was 162-14718. This was the number found upon the generator of the Wagner automobile. Exhibit No. 16 was the record of an automobile shipped to Havana, Cuba. None of the numbers of that automobile were the same as those upon the Wagner automobile, unless it was the body number. Presumably, this record was offered for the purpose of showing that the body of that automobile had the body number of the Wagner automobile. We are unable to locate in the voluminous record the body number of the Wagner automobile, although the writer has read the record carefully with that thought in mind. Exhibit 12 was the factory record of the Shannon automobile.

The evidence of the employee of the Cadillac company was to the effect that none of the numbers, either on the motor, generator, transmission or body were ever duplicated. The only reasonable explanation of the presence of these numbers upon the Wagner automobile is either that the particular parts were obtained from the automobiles shipped elsewhere and assembled in the Wagner automobile, or that the numbers originally up-

on the Wagner automobile had been changed. Either alternative tends strongly to prove that said automobile had been stolen from some one. The impossibility of the assembling of the different parts in one automobile is shown by the testimony of Mr. Ennis who visited New York shortly before the first trial and took the trouble to hunt up the Victoria Cadillac, of which Exhibit 13 is the factory record. He found the particular Victoria Cadillac in New York and took the numbers thereof. The transmission number was 11688, which the factory record showed it to be. This testimony, if believed, proved conclusively that said transmission was never placed upon the Wagner automobile.

The testimony offered by defendant tended to show that a Cadillac seven-passenger, touring automobile, motor number 59-E-329, was brought to a garage by one Charlie Miller early in September, 1920, and some repairs were made upon it and a work slip was made out. This was introduced in evidence. Other witnesses testified to the possession of a Cadillac seven-passenger, touring automobile by Wagner prior to November 24, 1920, when the Shannon automobile was stolen.

Defendant testified that at some time prior to November 24, 1920, one Charlie Miller of Wichita, Kansas, drove the Wagner automobile to his house in Kansas City and asked him to lend him $750 on the automobile; that he went with Miller to the police station and showed it to Harry Donnelly, who was an officer connected with the traffic violations in the city and who, at the time of the first trial, was an assistant prosecuting attorney. It seems that the automobile was taken there so that it could be determined whether or not it was a stolen automobile. After waiting a few days for a report, Wagner loaned Miller $750 and took the automobile in his possession as security. Donnelly's testimony given at the first trial was read at the second trial and it corroborated Wagner's testimony in this regard.

Defendant further testified that about the first of January, 1921, Miller again came to him and wanted to

borrow $1500 more on the automobile, making the indebtedness amount to $2250. After some negotiations a note for $2250 was signed by Miller and a chattel mortgage was executed by him in the office of an attorney, M. W. O'Hern, and acknowledgment taken before a stenographer, who was a notary public, and the chattel mortgage was filed for record in the office of the Recorder of Deeds.

There is no question, under the testimony, that a person, at least representing himself as Charlie Miller, appeared before Mr. O'Hern and the stenographer and signed and acknowledged the chattel mortgage and that it was thereafter duly recorded.

As above stated, there is very little room for doubt, under this record, that the Wagner automobile was a stolen automobile. If the testimony of Wagner and the other witnesses offered by him as to possession of the Wagner automobile by Charlie Miller prior to November 24, 1920, is true, that automobile was a different automobile from the one stolen from Mrs. Shannon.

On the first trial defendant, his wife and son did not testify as witnesses. All three testified upon the last trial. In rebuttal, the State offered evidence tending to show that defendant sustained a bad reputation for truth, veracity and general morality.

I. One of the assignments of error is that the demurrer to the State's evidence should have been sustained. Upon the evidence in the record upon the former appeal, it was held by this court that the State made a case for the jury. All of the facts there recited are shown in the record before us and we are fully satisfied that the State made a case for the jury. The testimony of Mr. Shannon and his family concerning the presence of the figure 8 upon the cowl and the cracked condenser tank of their automobile and the finding of similar markings upon the Wagner automobile tended strongly in themselves to show that the Shannon automobile and the Wagner automobile were one and the same automobile. In addition, there

**Sufficient Evidence.**

was testimony tending to show that the numbers on the generator of the Wagner automobile had been obliterated and a new set of numbers placed thereon. There was some testimony tending to show that the final ''8'' in the transmission number on the Wagner automobile and previously been a ''3.'' The transmission number on the Shannon automobile was 11683, while the transmission number on the Wagner automobile read 11688. We hold that the proof offered by the State made a case for the jury upon the question of whether or not the Shannon automobile was the same automobile as the Wagner automobile.

If the jury so found, then possession by defendant of such stolen automobile recently after it was stolen was a fact which authorized the jury to find that defendant was the thief thereof, if the jury deemed defendant's possession not to have been satisfactorily accounted for by him. The jury was not required to believe the testimony tending to show that defendant had the automobile in his possession before the Shannon automobile was stolen.

II. Error is assigned to the refusal of Judge Porterfield to grant defendant a change of venue. The case was first pending before Judge Southern of Division Five, sitting as judge of Criminal Division A. An affidavit was there filed by defendant alleging that Judge Southern and Judge Porterfield, of Division Seven, were biased and prejudiced and would not afford him a fair and impartial trial. Thereupon Judge Southern caused to be entered the following order:

**Change of Venue.**

''Now defendant files application and affidavit for change of venue; Division B being engaged and Division Seven being also designated to try criminal cases, by agreement of the judges of Divisions Numbered Five and Seven of this court, this cause is by the court transferred to Division Seven, as provided under the rules of the court.''

Thus it appears that defendant sought to disqualify two of the circuit judges of Jackson County. When the case was sent to Judge Porterfield's court which was Division Seven, defendant there filed a duplicate of the application for change of venue filed before Judge Southern and such application was overruled by Judge Porterfield on the ground that defendant was not entitled to a second change of venue. Exception was duly saved. Thereupon the following occurred:

"MR. RADER: The defendant pleads to the jurisdiction of this court and objects to the court assuming jurisdiction, for the reason that the affidavit for change of venue, filed before Judge Southern in the Criminal Division A, expressly named Judge Porterfield as incompetent to try the case on account of his bias and prejudice, and for that reason Judge Porterfield has no jurisdiction to hear and determine the case or anything involved there, and we ask that all further proceedings be quashed.

"THE COURT: Overruled.

"To which ruling and action of the court the defendant then and there at the time duly excepted and still excepts."

Counsel for defendant say that the application for change of venue conformed to Section 3991, Revised Statutes 1919, which provides:

"When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: . . . when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which such cause is pending will not afford him a fair trial."

The application for change of venue filed before Judge Southern sought to disqualify Judge Porterfield, a judge before whom the case was not then pending, and the application filed before Judge Porterfield was a

second application for a change of venue for the alleged bias and prejudice of the trial judge. A defendant is allowed only one such change of venue under this section of the statute. [State v. Callaway, 154 Mo. 91; State v. Anderson, 96 Mo. 241; State v. Greenwade, 72 Mo. 298.]

By Laws of 1921, page 220, the Criminal Court of Jackson County and the offices of judge and clerk thereof were abolished and jurisdiction of criminal cases in Jackson County was vested in the circuit court. Section 9 of said act is as follows:

"After the first Monday of January, 1923, changes of venue shall be allowed from said court in any criminal case pending therein, for any cause for which such changes are or may be allowed from other courts of this State having criminal jurisdiction, but whenever such changes are asked on the grounds of prejudice or other legal objections to any of the judges thereof who may have been assigned for the trial of such cases, no change shall be awarded, but the case shall be transferred to another division of said court to which the trial and disposition of criminal cases may have been alloted by the court."

This section does not undertake to define the grounds which authorize the granting of a change of venue and necessarily refers to the statutory grounds for change of venue set out in Section 3991 of the statute. The right to a change of venue is purely statutory. A change of venue granted on account of bias and prejudice of one trial judge precludes a second application based upon that ground. Section 3991 has frequently been so construed and those cases are controlling upon the construction to be given Section 9 of the 1921 Act found at page 222. Said Section 9 makes no provision for the defendant disqualifying more than one judge. The use of the word "judges" in said section does not give the accused such right. There is no requirement that the cause be transferred to the court of a judge against whom such cause does not exist.

Section 2682, Revised Statutes 1919, is part of the statute providing for the Criminal Court of Jackson County. It inferentially provided for disqualification of the judges of both Division One and Division Two by the following clause: " "If application for a change of venue in any division of said court shall be made against more than one judge thereof, the judge before whom the same is made shall determine whether on [or] not the facts exists as charged against the other judge."

Said Section 2682, while not expressly repealed by the 1921 Act, is inconsistent with Section 9 of that act (page 222). On the other hand, if said section be regarded as not repealed by Section 11 of the 1921 Act, its provisions do not apply. If said Section 2682 be regarded as still in force, the application pending before Judge Southern was properly denied as to Judge Porterfield, because no showing was made of the facts relied upon to disqualify Judge Porterfield.

While the statute does not explicity provide that the defendant in a criminal case shall not have more than one change of venue for the alleged bias and prejudice of the trial judge, we have so construed the statute. [See cases above cited.] Such is the expressed policy of the Legislature in civil cases. [Sec. 1357, R. S. 1919.]

The cases of State v. Spivey, 191 Mo. 87, and State v. Witherspoon, 231 Mo. 706, cited by defendant, are not in point. In neither case was there involved the right of a defendant to disqualify a second trial judge after having already dilsqualified one trial judge. Nor has In re Howell and Ewing, 273 Mo. 96, any bearing here. The question of the right of the State to a change of venue was incidentally involved there, but the real question was whether petitioners were properly adjudged to be in contempt of the trial court. What was there said concerning the duty of a trial judge to disqualify himself upon suggestion of bias was expressly stated to be the individual view of the writer of the opinion. Even if that part of the opinion expressed the views of a majority of the court, there is nothing therein which au-

thorizes us to convict the trial judge of error in overruling the *second* application of defendant for a change of venue for alleged bias and prejudice of the trial judge.

The statute contains just as much authority for a defendant to take any number of changes of venue for the prejudice of the trial judge as it does for the taking of two. There is no authority for the defendant to disqualify more than one trial judge. The trial court, therefore, did not err in overruling defendant's application for change of venue on the ground of alleged bias and prejudice on the part of Judge Porterfield.

III. Defendant assigns error in the admission in evidence of Exhibits 12, 13, 14, 15 and 16. We have previously described the general character of said exhibits. Claud Reed, chief clerk of the Parts Department of the Cadillac Motor Car Company for four years, **Record Entries.** and nine years altogether in that department, was the witness who procured and identified such exhibits. He was in charge of the records of that company. He produced the sales and shipping record of the Shannon automobile and the other automobiles above mentioned. The witness did not make the entries in such record. We will use Exhibit 12 as an illustration. It was the original order. It was kept under his supervision, but was made by others in the regular course of business. The Greenlease Motor Car Company of Kansas City sent the order for the Shannon automobile to the Cadillac factory and such order was filed. It was sent to the shipping department by the sales department and the entries upon such original order were there made in the usual course of the filling of such original order. The original order itself was then filed and kept under the supervision of the witness Reed. It was the original order, with entries of the numbers of the various parts of the automobile delivered in filling the order and made at the time, which was offered in evidence. The same situation existed as to Exhibits 13, 14, 15 and 16, covering the sale and shipment of the other Cadillac automo-

biles mentioned. Such is the evidence which appellant contends was erroneously admitted by the trial court.

Said exhibits appear to be fair and regular on their faces and were properly and sufficiently identified as having been made and kept in the regular and orderly course of business and made at the time of the filling of the order and were admissible in evidence. [Anchor Milling Co. v. Walsh, 108 Mo. l. c. 285; Robinson v. Smith, 111 Mo. l. c. 207; Lyons v. Corder, 253 Mo. l. c. 548; Dameron v. Harris, 281 Mo. l. c. 265.] Such is the rule, even where such records are offered in his own behalf by a party to the suit. For a still stronger reason such records should be regarded as legal and competent evidence when kept and produced by a wholly disinterested person.

Defendant contends that said exhibits were inadmissible because the entries were not made by the witness Reed and were not made under his immediate observation or direction. The witness did not know by what particular individual employees of the Cadillac Company the entries were made. He did testify that they were made at the time and in the course of the business of filling the particular orders. Cases are cited seemingly requiring that the entries should be made by the person producing or identifying the record or made under his direction or that the handwriting should be identified as that of the person who made the entries in the ordinary course of the business. A rule as thus contended for was sufficient to meet the simple business and industrial conditions of a century ago, but is utterly inadequate to meet the complicated conditions of today. The record shows that the Cadillac Company manufactured, and presumably marketed, twenty thousand automobiles in the year 1920, when the Shannon automobile was purchased. It is common knowledge that such output was scarcely a drop in the bucket compared with the enormous output of certain companies which manufacture the lower or popular priced automobiles. It is also a matter of common knowledge that one such com-

pany is placing upon the market many hundreds of thousands of its automobiles every year. The employees of such a company must be exceedingly numerous. They are likely to be here today and tomorrow some where else. Within a year after any given order for an automobile has been filled the employee who made the entries in filling the order may be dead or his whereabouts unknown. It would be utterly impossible in all cases, and wholly impracticable in most cases, to produce in court the employee who made the entries or any witness who saw him make the entries upon a given order or who could testify to the genuineness of his handwriting so as to make the order admissible under such a rule. It was and still is workable in the case of the small merchant with one or two clerks. Such a rule is utterly inadequate to fit the present day conditions of "big business." The law is a progressive science and must be made responsive to changing conditions. The best and only proof obtainable should be accepted in evidence.

Here we have the original orders containing the entries made by the employees of the Cadillac Company contemporaneously with and in the ordinary course of filling sales orders. There is not the slightest possibility that such entries were falsely made or made for any improper purpose. The likelihood of mistakes is negligible. The exhibits were produced and indentified as having been made in such ordinary course of business and were produced by a witness whose interest in the result of the case is not even suggested. Certainly the employee who made the entries could not possibly have had any such interest. Whatever the rule may be generally, it is apparent that the trial court committed no reversible error in admitting in evidence Exhibits 12, 13, 14, 15 and 16 under the circumstances and upon the showing made in this regard.

We have examined the cases cited by defendant. They may all be distinguished under the facts in the case at bar. The assignment is overruled.

IV.  Complaint is made of the admission in evidence of the testimony of officer James Orford that the last figure in the transmission number of the Wagner automobile had the appearance of having been changed from a "3" to an "8."  He had previously testified,

Objection to
Questions.

without objection, that said number appeared to have been changed.  He was then asked: "Q.  All right. Now, changed from what to what?"  The objection lodged to this question was that it called for a conclusion.  The trial judge did not rule on the objection, but merely said, "If you know."  Counsel for the State then abandoned that question and said: "Just describe the appearance of that last number, what it had been and what it had been made into."  The objection then lodged was, "I object to this as assuming something that has not been testified to, and leading the witness, and object to the question as improper, and ask this special prosecutor to be reprimanded."  This objection was overruled and exception saved.

It thus appears that there was no objection to the question answered upon the ground that it called for the conclusion of the witness.  The objection that the question assumed something not testified to was not well founded because, as above stated, the witness had just testified, without objection, that the number appeared to have been changed.  The objection that the question was leading is obviously without merit.  The objection that the question was improper constituted no objection whatever because no reason why it was improper was assigned.

The cases cited by counsel for the defendant under this assignment deal with the impropriety of permitting witnessess to testify to matters of conclusion on their part.  As above pointed out, no such objection was made to the question which was answered and such cases need not be noticed.  The assignment of error is therefore overruled.

V. A further assignment of error is as follows:

"The court erred in permitting Mr. Lee, special prosecutor, over the objection and exception of the defendant, to propound to the witness Herman Smith, this question, and in permitting Mr. Smith to make this answer to said question:

" 'Q. If you had known that the factory records of the Cadillac Company, Detroit, Michigan, had shown that the transmission number that the car bore when you examined it in March, 1921, was then on a car owned by a man in Brooklyn, New York, a Victoria Cadillac car, would that then have aroused your suspicion any further? A. No, sir, it wouldn't.' "

The objection lodged was that the question called for a conclusion and was not based upon any evidence in the case. The latter objection was not well taken,

Suspicion:
Conclusion:
Cross-Examination.
because Exhibit 13 tended to show that a Cadillac automobile shipped to New York bore such transmission number, and witness Ennis had found that automobile in New York after the Wagner automobile was taken out of the possession of defendant.

Nor can the assignment of error be sustained on the ground that the question called for a conclusion. When the record is examined it discloses that witness Herman Smith testified for defendant and was being cross-examined by the State when such question was asked. He had testified as an expert that the final "3" of the transmission number did not have the appearance of having been changed to an "8" and also that the appearance of battered numbers on the generator housing did not arouse his suspicion that the automobile had been stolen. The question here objected to was one of several quite similar questions, evidently asked to show the interest, disposition or bias of the witness in that he was seemingly willing to testify to anything to help defendant. It could only have been asked for some such purpose. We have always held that the range and character of cross-examination of a witness are largely

within the discretion of the trial judge. Such discretion was clearly not abused on this occasion. [40 Cyc. 2511; State v. McLaughlin, 149 Mo. l. c. 32; Czezewzka v. Railway Co., 121 Mo. l. c. 213.]

In the last case cited, BRACE, J., said: "It often becomes necessary, in order that a jury may properly weigh the testimony of a witness, that his temper, feeling and disposition be made manifest by cross-examination. The extent to which this may go must necessarily be left largely to the discretion of the trial judge."

The question asked of witness Smith certainly tended to disclose his temper, feeling and disposition. His answer disclosed an express disregard for facts which, if known, would have made suspicious even men of inferior intelligence and would have caused men of ordinary intelligence to feel certain that the transmission number had been tampered with, even though it bore no convincing evidence of such fact from its appearance.

In State v. Bowman, 278 Mo. 492, relied upon by defendant, the witness under cross-examination was the defendant. While the court there held that a somewhat similar question called for a conclusion and was improper, it is apparent that the error was deemed to be prejudicial solely because the question was asked of the defendant himself. No objection that it was improper cross-examination of the defendant had been lodged against the question. An entirely different situation is presented concerning the existence of prejudicial error in permitting such a question to be asked of a witness other than the defendant himself.

VI. Complaint is made of the refusal of the trial court to permit witness Bishop to testify whether the motor number on the Wagner automobile appeared to have been tampered with or changed in any way. The trial court sustained an objection on the ground that the automobile which witness examined had not been sufficiently shown to have been the automobile in question.

Proffer of
Proof.

Regardless of the correctness of the trial court's ruling, the question is not properly preserved for review by this court, because defendant made no offer of proof showing what he expected the testimony of witness Bishop to be. We have so frequently ruled that we will not review assignments of error in excluding alleged proper testimony where no offer of proof is made, that citation of authority is entirely unnecessary. The contention of defendant that the nature of Bishop's excluded testimony is revealed by the questions asked of him is not borne out by the record. The assignment is overruled.

VII. The only remaining assignment of error is that the trial court improperly permitted witness Orford to testify concerning matters discovered by an alleged

**Unlawful Search.** unlawful search, without the sanction of a search warrant, in violation of defendant's constitutional rights. The record does not disclose that a motion to suppress testimony, obtained by means of such alleged unlawful search, was filed. Such objection is ineffectual when raised for the first time when such testimony is offered during the progress of the trial. [State v. Merrell, 263 S. W. (Mo.) l. c. 122; State v. Owens, 259 S. W. (Mo.) l. c. 102; State v. Pomeroy, 130 Mo. 489; State v. Sharpless, 212 Mo. 176.] Such condition of the record renders it unnecessary and indeed improper for us to consider whether the constitutional rights of the defendant were in fact violated.

VIII. We have patiently and carefully studied the voluminous record in this case and find no reversible error therein. It is true no witness testified that he saw defendant take Mrs. Shannon's automobile or even saw

**Facts Authorizing Verdict.** him in the vicinity where such automobile was stolen; but the evidence very strongly tends to show that the Shannon automobile was in fact the automobile found in the possession of defendant recently after it was stolen. The conclusion is irresistible that the automobile found

in defendant's possession was in fact a stolen automobile. It was a question for the jury whether the alleged two different automobiles were one and the same automobile. It was also a question for the jury whether defendant had satisfactorily accounted for his possession of the Shannon automobile, if it was the Shannon automobile, in a manner consistent with his innocence. If the jury found that defendant failed satisfactorily to account for his possession, it had the undoubted right from such fact of unexplained possession of property recently stolen to infer and to find that the defendant himself was the thief, as he was charged to be.

We are not authorized to interfere with the verdict returned by the jury. The judgment thereon by the trial court is therefore affirmed. All concur.