Weakley *v*. Wolf.

---

## WEAKLEY *v*. WOLF.

[No. 18,241.   Filed June 10, 1897.]

ELECTIONS.— *Contests.— Municipal Elections.—Right of Appeal. — Statutes Construed.—*Construing section 6323, Burns' R. S, 1894 (4767, R. S. 1881), providing that all contests for municipal offices shall be tried in the manner provided by law for the contest of county and township offices, with section 644, Burns' R. S. 1894 (632, R. S. 1881), providing generally for appeals from the circuit courts to this court, an appeal will lie from the circuit court from contested municipal elections, notwithstanding no right of appeal is specially granted in such cases under the former statute. *pp. 211– 213.*

APPEAL AND ERROR. — *Longhand Manuscript of Evidence.— How Made Part of Record.—Act of 1897 Construed.—*Under the act of March 8, 1897 (Acts of 1897, p. 244), the record need not show that the longhand manuscript of the evidence was filed in the clerk's office before it was incorporated in the bill of exceptions, but the evidence is properly in the record where the transcript contains the original bill of exceptions embracing the evidence, and

shows that the bill was presented to the judge within the time allowed by law and given by the court, and that it was signed by the judge and filed with the clerk.  *pp. 213–215.*

EVIDENCE. — *Election Contests.— Mutilated Ballots. — Statute Construed.*—Under the provision of section 6248, Burns' R. S. 1894, of the election law, that all disputed ballots shall be preserved and all the remaining ballots be destroyed by the election officers at the completion of the count, by totally destroying the same with fire, evidence by the election officers as to the manner in which the destroyed ballots were marked, and for whom they were counted is incompetent in the trial of a contested election case.  *pp. 215–219.*

VENUE.—*Change Of.—Special Proceeding.— Statute Construed.—* It is error to refuse to grant a change of venue from the county in a contested election case where application therefor has been properly made under the third specification of section 416, Burns' R. S. 1894 (412, R. S. 1881).  *pp. 219–221.*

From the Shelby Circuit Court.  *Reversed.*

*T. B. Adams, Isaac Carter, D. L. Wilson* and *W. A. Yarling*, for appellant.

*L. F. Wilson, D. H. Thompson, A. F. Wray, T. H. Campbell, K. M. Hord* and *E. K. Adams*, for appellee.

HOWARD, J.—At the regular election, held May 5, 1896, in the city of Shelbyville, as duly certified to by the board of canvassers of said election, at their meeting held May 6, 1896, it appears that 652 votes were cast and counted for the several candidates for councilmen of the fourth ward of said city, of which votes the appellant received 307, the appellee 305, and a third candidate 40; and thereupon the said board of canvassers declared the appellant duly elected to said office.

On the same day, in accordance with the provisions of section 6323, Burns' R. S. 1894 (4767, R. S. 1881), the appellee filed in the office of the clerk of the Shelby Circuit Court his complaint against the appellant for a contest of said election.

VOL. 148—14

A change of venue being taken from the regular judge, the special judge below was appointed to try the cause. On hearing the evidence, the court found that eleven ballots with distinguishing marks had been counted for said candidates, of which defective ballots seven had been counted for the appellant, three for the appellee, and one for the third candidate. Deducting the defective ballots so cast and counted for the several candidates, the court found that the appellee had a plurality of two votes, and declared him elected.

The alleged defective ballots were all cast in the third precinct of the ward; and no other irregularity is charged to have occurred at the election.

In the third precinct the appellant received and had counted for him 123 votes, the appellee 116, and the third candidate 21; while two mutilated ballots were not counted for any one, but were sealed up and preserved as required by law. No question is made as to those two mutilated ballots. Of the eleven alleged defective ballots which were counted, none were protested, but all were placed with the other ballots which had been counted for the candidates, and, together with such ballots so counted, were destroyed, as provided by statute in case of ballots counted and undisputed and not protested.

Many errors are assigned on this appeal, but only that relating to the overruling of the motion for a new trial is discussed by counsel. At the outset, however, we are met with some contentions by appellee which must first be considered.

It is contended that we have no jurisdiction of this appeal, for the reason, as urged, that the statute above cited, and being the only one under which provision is made for contests for municipal offices, does not give the right of appeal from decisions of circuit courts in such contests.

Previous to 1881 there was no statute providing for contests for municipal offices; and the only mode of questioning the validity of the election of a city officer was by an information in the nature of a *quo warranto.* *Gass* v. *State,* 34 Ind. 425.

By the act of May 4, 1852, concerning election contests (1 R. S. 1852, p. 269; 1 Gavin & Hord, p. 316; 1 Davis, R. S. 1876, p. 448), provision was made for contests for county and township offices before the board of county commissioners, with the right of appeal to the circuit court, "as from other decisions of such board;" and by an act approved March 2, 1859 (Acts 1859, p. 35; 1 Gavin & Hord, p. 319; 1 Davis, R. S. 1876, p. 451), a further appeal was allowed in such cases to the Supreme Court, "as in other civil cases."

Those statutes were substantially re-enacted in the act concerning elections and the contests thereof, approved April 21, 1881, Acts 1881, p. 498, sections 6299-6324, Burns' R. S. 1894 (4743-4768, R. S. 1881); and there was added, in section 90 of said act, the provision for contesting municipal offices under which the action in the case at bar was brought. This section reads as follows:

"All contests for municipal offices shall be tried before the circuit court of the proper county in the manner provided by law for the contest of county and township offices. The clerk of the circuit court shall be the person with whom the notice of contest shall be filed, and he shall perform all the duties required to be performed by him and the auditor in other cases, and the contest shall be set down for trial at the next term of such circuit court."

It thus appears that contests for municipal offices are to be tried "in the manner provided by law for the contest of county and township offices." This section having been introduced into the act long in force for

the contest of county and township offices, and it being expressly provided that the contest as to municipal offices should be tried in the same manner as in the case of county and township offices, it would seem to follow that all the incidents of the contest should be as near alike in both cases as might be. This would appear to include whatever relates to pleadings, notice, motions, change of venue, new trial, exceptions, appeal, and anything else that may be deemed necessary to secure a fair and impartial determination of the rights of the parties.

While the right of appeal to this court in municipal election contests does not seem to have been heretofore called in question or expressly passed upon, yet, in *Gimbel* v. *Green*, 134 Ind. 628, such an appeal was entertained by the court, jurisdiction assumed and the case decided.

Before the enactment of the statute under consideration, the right to hold a municipal office might, as we have seen, have been determined by *quo warranto* proceedings, and in such action there might have been an appeal taken to this court. In extending the remedy by contest to the determination of the right to hold such offices, it is not to be presumed that the legislature intended to lessen rather than enlarge the scope of the remedy that already existed. A statute will not, in general, be so interpreted, unless its words will admit of no other meaning, as to impair rights already existing. *Bruce* v. *Schuyler*, 4 Gilman 221, 46 Am. Dec. 447. Unless, therefore, it is expressly, or by necessary implication, provided in a statute that there shall be no right of appeal from a final judgment of the circuit court such right should be presumed to exist.

In section 4322, Burns' R. S. 1894 (3301, R. S. 1881), it is provided, among other things, that the final order of the board of county commissioners declaring

Weakley *v.* Wolf.

that a town has been incorporated "shall be conclusive of such incorporation" in all courts and places in this state; and it was at first accordingly held in many cases that there could be no appeal from such an order.    But in *Grusenmeyer* v. *City of Logansport*, 76 Ind. 549, those decisions were overruled, and it was held that, since, by section 7859, Burns' R. S. 1894 (5772, R. S. 1881), appeals from decisions of county boards generally are provided for, those two statutes should be read together, and that an appeal would therefore lie from an order of the board declaring that a town has been incorporated, inasmuch as the general act provides for the appeal and the special act does not, either "expressly or by necessary implication," deny such right of appeal; and this is still the rule.

There is in the statute under consideration no express denial of the right of appeal from the circuit court to this court, while the implication, instead of being against such right, is, as we have seen, strongly in its favor.    But the general statute concerning appeals from the circuit court to this court, section 644, Burns' R. S. 1894 (632, R. S. 1881), provides that "Appeals may be taken from the circuit courts and superior courts to the Supreme Court, by either party, from all final judgments," except in certain actions originating before a justice of the peace.    These two statutes should also be read together; and as the statute providing for municipal election contests does not, either "expressly or by necessary implication" deny the right of appeal from the final judgment of the circuit court in such a contest, it should be held also that, under the general statute, the appeal will lie.

It is also contended by appellee that no question arises in this case as to any matter requiring an ex-

amination of the evidence, for the reason that the bill of exceptions containing the evidence is not in the record. This contention is based upon the fact that it appears that the bill of exceptions and the longhand manuscript of the evidence were both filed in the clerk's office on the 21st day of April, 1897, but that it does not appear whether the longhand manuscript was so filed before it was incorporated in the bill. This objection would undoubtedly have been fatal to the validity of the bill of exceptions under the law as it formerly stood. *Smith* v. *State*, 145 Ind. 176; *Beatty* v. *Miller*, 146 Ind. 231.

The record on this appeal, however, was filed in this court April 23, 1897; while on March 8, 1897, an act was approved which greatly simplifies the manner of bringing up the evidence on appeal. Acts 1897, p. 244. That act was in force from and after its passage, and was therefore the law upon the subject before the case at bar was filed or pending on appeal in this court.

The first section of the act, omitting the enacting clause, reads as follows: "That to make the evidence, and all rulings of the court in respect to the admission and rejection of evidence and the competency of witnesses and the objections and exceptions thereto in any civil or criminal cause a part of the record upon appeal to the Supreme or Appellate Court, it shall be sufficient if the transcript contain the original bill of exceptions embracing all such evidence; including that which is oral, documentary, and by deposition offered and heard in such cause; and all such rulings, objections, and exceptions: *Provided, however,* That it shall appear from the record that such bill was presented to the proper judge of the trial court for settlement and signature within the time permitted by law and that allowed by the court, and that the same was signed by the judge and filed with the clerk of said

trial court or in open court. And it is hereby made the duty of the clerk of any trial court, when requested to do so by the party appealing, to embrace in the transcript such original bill of exceptions instead of a copy thereof: *Provided,* That the provisions of this act shall not apply to cases now pending on appeal in the Supreme or Appellate Court."

The transcript in the case at bar contains the original bill of exceptions embracing the evidence. The court entry preceding and introducing the bill, shows that the bill was presented to the judge within the time permitted by law and that allowed by the court, and that it was signed by the judge and filed with the clerk. We are of opinion that this is a full compliance with the foregoing statute, prescribing the manner in which the evidence may be made a part of the record on appeal to this court. It is immaterial in what form or by whom the evidence is written, provided only it is embraced and certified to in a proper bill of exceptions.

The main contentions urged by appellant in favor of a reversal of the judgment are: (1) That the court erred in overruling the motion for a change of venue from the county, and (2) that it also erred in permitting the election officers to testify as to the markings on the eleven defective ballots that were counted and then destroyed without protest, and in permitting said officers to testify for whom such defective ballots were cast and counted. We shall consider this latter objection first.

It was alleged in the first paragraph of the complaint, upon which paragraph the finding and judgment rest, that certain ballots, having distinguishing marks, and sufficient in number to change the result of the election, had been wrongfully canvassed and counted for the appellant; and that the particulars of

such markings could not be fully given for the reason that said ballots so counted had been destroyed by said election officers.

This is the first time, so far as we can learn, that this question has been before the court. The appeals heretofore, under the Australian ballot law, have been regarding the counting of marked ballots that had been protested and preserved, and not as to markings on ballots that had been counted without protest and then destroyed.

When, on the trial, objection was first made to the giving of evidence by the election officers as to how the destroyed ballots had been marked, and for whom they had been counted, the objection was sustained by the court, the judge saying, in substance: "I understand the object intended by the legislature in framing the law was, that the record made by the election officers, in counting the ballots, should be conclusive, except where protests are made and exceptions and objections properly taken, and evidence thus preserved which may be brought forward in any tribunal for the purpose of investigating the election. But it is provided that the ballots counted are to be destroyed. If it was intended that evidence should be introduced as to how those ballots were voted, the ballots themselves would be the best evidence and they would be preserved; but that was not the intention of the law. The officers were to make a record then and there, and that should be conclusive, except as I have stated."

We think the court thus properly stated the object of the law; and that it was error afterwards to have admitted the evidence objected to. The tally sheets and certificates of the election officers are made a conclusive record as to how the undisputed ballots were cast and counted, and that they were legally so

cast and counted. But, to guard against the possibility of error in counting illegal, or in failing to count legal, ballots, wherever there is question of mutilation or distinguishing marks, it is provided that on protest, such ballots shall be preserved for future examination.

The provision governing in such case is found in section 52 of the general election law, as amended by the act of March 6, 1891 (Acts 1891, p. 124, section 6248, Burns' R. S. 1894), and is as follows: "In the canvass of the votes any ballot which is not endorsed with the initials of the poll clerks, as provided in this act, and any ballot which shall bear any distinguishing mark or mutilation shall be void and shall not be counted, and any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate or candidates affected thereby: *Provided, however,* That on protest of any member of the board such ballot, and all disputed ballots shall be preserved by the inspector, and at the close of the count placed with the seals of the ballot packages in paper bags, securely sealed, and so delivered to the clerk of the county with notification to him of the number of ballots so placed in such bags, and of the condition of the seals of the ballot packages. The poll clerk shall also record on the tally sheets, memoranda of such ballots and the condition of the seal of the ballot packages, and in any contest of election such ballots and seals may be submitted in evidence. On completing the count and recording the same on the tally sheets, all the remaining ballots, except those marked, mutilated, or otherwise defective, as in this section hereinbefore described, shall be destroyed by the election board by totally consuming by fire before adjournment, and thereupon the election board shall immediately make

a memorandum of the total vote cast for each candi-
date and deliver a copy thereof to each member of
such board."

The intention of the law is here clearly manifested,
as we think.  It is, that all undisputed, unprotested
ballots shall be destroyed before the adjournment of
the election board.  The words relating to their de-
struction are most emphatic, that they shall be de-
stroyed "by totally consuming by fire," as if it were
the determination of the law-making body that no
vestige whatever of such ballots or of their appear-
ance should by any possibility be left, but that the
record of them made by the election board should be
conclusive as to their legal form and as to the candi-
dates for whom they had been voted and counted.

As to protested ballots, however, the very best evi-
dence is provided by the legislature, to show both for
whom they were voted and what were the mutilations
or distinguishing marks, if any, upon them; and that
evidence is the ballots themselves.  As the judge of
the trial court well said, if it had been the intention of
the legislature that any evidence should ever be given
as to those ballots which had been counted without
protest from any member of the election board, it
would never have been provided that such ballots,
showing on their face, and without the possibility of a
doubt, how they had been voted and what marks, if
any, were upon them, should be destroyed.  The best
evidence would thus have been totally consumed by
fire; and in place of such evidence, the court would
be compelled to determine, as best it could, from the
uncertain memory of one or more members or clerks
of the election board, weeks or months afterwards,
how such ballots had been voted and whether or not
the markings, if any, were such as to make the ballots
or any of them illegal.

Weakley *v.* Wolf.

It was and is the policy of the Australian ballot law, as we believe, to prevent forever any tampering with or dispute about ballots that had been cast and counted without protest or objection from any member of the election board. To secure such protest whenever it ought to be made, it is provided that the political friends of the two candidates, either of whom is morally certain to be elected, shall both be represented on the board. If it be urged that all the members of the board might be ignorant of the law, or careless of their duty, it is to be answered that these were and still are matters for the consideration of the legislature. That body deemed the mode prescribed for conducting an election, and preserving evidence of its results, to be the best that could be devised for securing an honest vote and a faithful count. If, through human frailty, the method adopted should, in some instances, fail of its object, that is but to say that man and his methods are not perfect. It is, however, generally conceded by all the people of the State, as the result of years of experience, that our present ballot law, notwithstanding any objections that may be urged against it, is the best ever enacted and observed by a free people.

Although the judgment must be reversed for the reasons given, yet it may be better that we should also consider the remaining contention of appellant, that it was error to refuse a change of venue from the county.

The statute, section 416, Burns' R. S. 1894 (412, R. S. 1881), provides that "The court in term, or the judge thereof in vacation, shall change the venue of any civil action upon application of either party, made upon affidavit showing one or more of the following causes: * * *

"Third. That the opposite party has an undue in-

fluence over the citizens of the county, or that an odium attaches to the applicant, or to his cause of action or defense, on account of local prejudice."

The appellant made an affidavit in accordance with the foregoing provisions of the statute. The statute does not permit any showing by counter affidavits; and it has been held, without exception, that where, in a civil action, a motion for a change of venue is made in compliance with the statute, it is the imperative duty of the court to grant the change. *Route* v. *Ninde,* 118 Ind. 123.

But it is said that this is a special proceeding, and not a civil action; and that the statute under which the proceeding is brought does not provide for change of venue. In the early decisions there seems to have been a disposition to refuse changes of venue in all special proceedings, wherever the special statute giving the right of action did not provide for such change. But our later decisions have extended the general provisions of the code to such special proceedings, in so far as the particular statutes have not provided a different or inconsistent procedure of their own. Accordingly, whenever the question has been raised, changes of venue have been sanctioned in almost every proceeding, not especially affecting the privilges or rights of the court or those committed to its discretion, as in contempt proceedings or where the change is asked for on account of convenience of witnesses or the like.

Such right to a change of venue from the county has been recognized in proceedings to contest the validity of a will, *Rogers* v. *Howard,* 4 Ind. 325; on appeals in case of applications for liquor licenses, *State* v. *Vierling,* 33 Ind. 99; in bastardy proceedings, *Saint* v. *State,* 68 Ind. 128 (though it was held in one case that the relatrix in bastardy, not being a party, but a witness

only, could not have such change, *State* v. *Smith*, 55 Ind. 385); claims against decedents' estates, *Lester* v. *Lester*, 70 Ind. 201; suretyship, *Williams* v. *Fleenor*, 77 Ind. 36; proceedings supplementary to execution, *Burket* v. *Bowen*, 104 Ind. 184; divorce, *Evans* v. *Evans*, 105 Ind. 204; drainage, *Bass* v. *Elliott*, 105 Ind. 517; guardianship, *Berry* v. *Berry*, 147 Ind. 176.

Following the reasoning and analogy of those cases, we are of opinion that the change of venue asked for in this case should have been granted.

The judgment is reversed, with instructions to grant a new trial.