236 Ind. 69 (1956)
138 N.E.2d 875
STATE OF INDIANA ON THE RELATION OF FOX, ETC.
v.
THE LaPORTE CIRCUIT COURT ET AL.
No. 29,396.
Supreme Court of Indiana.
Filed December 17, 1956.
*71 Patrick Brennan, Prosecuting Attorney, 60th Judicial Circuit, Isadore D. Rosenfeld, Deputy Prosecuting Attorney, and Raymond M. Fox, of LaPorte, for relator.
Alfred J. Link, of LaPorte, and Floyd O. Jellison, of South Bend, for respondents.
BOBBITT, J.
On February 9, 1953, one Robert Lee Johnson was indicted for murder in the first degree by the Grand Jury of St. Joseph County. On May 14, 1953, a motion for a change of venue from the county (St. Joseph) "on account of local prejudice," was filed and granted, and the venue subsequently changed to LaPorte County. The cause was there tried and a verdict of guilty was returned on December 31, 1953. A motion for a new trial was subsequently filed and, on July 2, 1954, a new trial was granted.
On May 4, 1955, defendant, Johnson, filed an affidavit for a change of venue from LaPorte County on account of bias and local prejudice, to which the State filed objections. On May 23, 1955, this motion was denied. On June 1, 1955, the defendant filed an affidavit for a change of venue from the judge and respondent, Fleishbein, was subsequently selected and qualified.
On October 4, 1955, the defendant again filed an affidavit for a change of venue from LaPorte County for *72 the same reasons stated in the affidavit which was denied by the regular judge. The State also filed objections to this affidavit on the ground, among others, that since the defendant had already had a change of venue from St. Joseph County he could not, under the provisions of Acts 1905, ch. 169, § 207, p. 584, being § 9-1305, Burns' 1956 Replacement, obtain another from LaPorte County.
Thereafter, on December 28, 1955, the following order was entered by the special judge:
"Presentation of affidavits and argument of all counsel is now heard and concluded, and defendant's petition for transfer and change of venue to another county is now granted by the court, to which ruling of the court the State of Indiana now objects and excepts."
On March 1, 1956, the State filed a petition for writ of mandate in this court, asking that respondents be mandated "to expunge the records of said court of the entry granting a change of venue" from LaPorte County. We issued an alternative writ.
The question here presented is: Did respondents have the power and authority, under the factual situation in this case, to grant a change of venue from LaPorte County?
First: Could the trial court under its common law power grant a change of venue from LaPorte County? Acts 1927, ch. 132, § 10, p. 411, being § 9-1301, Burns' 1956 Repl., and § 9-1305, supra, provide respectively:
"The defendant may show to the court, by affidavit, that he believes he cannot receive a fair trial, owing to the bias and prejudice of the judge against him, or the excitement or prejudice against the defendant in the county or in some part thereof, and demand to be tried by disinterested triers. Any affidavit for change of judge shall be filed at least ten [10] days before the day set for trial or if a date less than ten [10] days ahead is set for *73 trial then such affidavit shall be filed within two [2] days after the setting of the case for trial."
"When affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change of venue to the most convenient county. The clerk must thereupon immediately make a transcript of the proceedings and orders of court, and, having sealed up the same with the original papers, shall deliver them to the sheriff, who must, without delay, deposit them in the clerk's office of the proper county, and make his return accordingly: Provided, however, That only one [1] change of venue from the judge and only one [1] change from the county shall be granted."
Insofar as the above statutes are inconsistent with the common law rule pertaining to a change of venue, the common law is superseded to the extent of such inconsistency, and is no longer any part of the law of this State. McCoy v. Payne (1879), 68 Ind. 327, 336.
The common law rule as to change of venue must yield in this case to a valid statute (Acts 1905, ch. 169, §§ 203-217, as amended) which supersedes such rule. Cloud v. Bruce (1878), 61 Ind. 171, 174; Sopher v. State (1907), 169 Ind. 177, 182, 81 N.E. 913, 14 L.R.A. (N.S.) 172, 14 Ann. Cas. 27; Atkinson v. Disher (1912), 177 Ind. 665, 673, 98 N.E. 807; Southern R. Co. v. Howerton (1914), 182 Ind. 208, 220, 105 N.E. 1025, 106 N.E. 369; Connell v. State ex rel. Thompson (1925), 196 Ind. 421, 430, 431, 144 N.E. 882, 148 N.E. 407.
The sections of the statute above quoted provide a mode of procedure for a change of venue in criminal proceedings in this State, and it must be followed and obeyed by the courts. Sanders v. State (1882), 85 Ind. 318, 322, 44 Am. Rep. 29; Nealis, *74 Administrator et al. v. Dicks et al. (1880), 72 Ind. 374, 377.
The decisions of this court, from its inception, sustain the view that a right to a change of venue and the extent and manner of exercising such right, both in criminal and civil procedure, are regulated and controlled by statutory authority. In a civil case, State ex rel. Young v. Niblack (1951), 229 Ind. 509, 513, 99 N.E.2d 252, this court said:
"Statutes providing for and governing changes of venue are designed as procedural safeguards of a fair trial. `The rights of the parties and the powers of the courts in regard to changes of venue are regulated by statute. While a common law right to a change of venue upon certain grounds has been recognized in some jurisdictions where no complete statute upon the subject exists, Crocker v. Justices (1911), 208 Mass. 162, 94 N.E. 369, 21 Ann. Cas. 1061, the general rule is that a change of venue can be asserted and be exercised only in the manner provided by the statute and in accordance with the provisions thereof.' State ex rel. v. Superior Court of Marion County (1931), 202 Ind. 456, 174 N.E. 732."
Also, in The Michigan Mutual Life Insurance Company v. Naugle (1891), 130 Ind. 79, 80-81, 29 N.E. 393, it is said:
"It is apparent that the Legislature, in the enactment of the statute governing changes of venue, sought to accomplish a double purpose. It was designed, primarily, to enable litigants to remove their causes for trial from an atmosphere of prejudice and unfairness to a locality where they might find fair and unbiased triers, with surroundings not tainted by an undeserved odium affecting them or their cause. At the same time they wished, so far as possible, to limit the mischief that might be done by those whose only wish was delay, and the hindrance of justice. Therefore, while providing for changes of venue, they allow but one change, and invest the court *75 with the discretion of designating the county to which it shall go, and the time within which the change shall be perfected by the payment of the cost.
"When the one change allowed is granted, whether it is perfected or not, the party who asked it can have no other change. The making of the order ends his right. He has then had the one change of venue allowed him, whether he avails himself of it or not. When a party applies to a court for a change of venue it must be presumed that the application is made in good faith, not for delay, but because the party asking it really believes he can have a fairer trial elsewhere."
To the same effect see also: Duggins v. The State (1879), 66 Ind. 350, 352.
The rule as stated above applies with equal force to applications for change of venue in civil and criminal proceedings, unless there is some constitutional provision to the contrary. 22 C.J.S., Criminal Law, § 187, p. 300.
As demonstrating further, the view of this court that the right to a change of venue in Indiana is statutory, see: Millison v. Holmes and Others (1848), 1 Ind. 45, 46; The State ex rel. Mabbitt v. Smith (1876), 55 Ind. 385, 386; Weakley v. Wolf (1897), 148 Ind. 208, 219-221, 47 N.E. 466; Daniels v. Bruce (1911), 176 Ind. 151, 156, 95 N.E. 569; State ex rel. v. Superior Court of Marion County (1931), 202 Ind. 456, 461-462, 174 N.E. 732; Stair v. Meissel (1934), 207 Ind. 280, 290-292, 192 N.E. 453.
The court in Crocker v. Justices of Superior Court (1911), 208 Mass. 162, 94 N.E. 369, 21 Ann. Cas. 1061, relied upon by respondents, recognizes the right of the Legislature to appropriate the entire field of change of venue when, at page 376 of 94 N.E., it said:
"There are authorities collected in a footnote which seems to have a contrary appearance. It is not necessary to examine them one by one. Most *76 of them are to be distinguished as arising under constitutions which have some controlling provision, or under statutes or Codes which cover the whole subject-matter of change of place of trial in great detail and leave nothing to be governed by the common law." (Our italics.)
In Stamp v. Commonwealth (1923), 200 Ky. 133, 253 S.W. 242, at page 245, the Court of Appeals of Kentucky in a case where the trial court had denied a second change of venue after the first trial had resulted in a hung jury, said:
"The right to change of venue in a criminal case is one provided by statute, and the Legislature has authority to provide the extent and manner of its exercise. It might take it away altogether, or it could change the method of invoking it."
The general rule applicable here is concisely stated in 22 C.J.S., Criminal Law, § 187, p. 300, as follows:
"Subject to constitutional restrictions, the right to a change of venue in criminal cases and the extent and manner of exercising such right are matters of statutory regulations; the legislature may take away the right altogether, or it may enlarge such right under a constitutional provision conferring authority to make such modifications of existing laws as may be necessary to regulate and give force to its provisions as to the removal of causes."
The Legislature in Indiana has, by statute,[1] covered the whole subject-matter of change of venue, in both civil and criminal cases, and has left nothing to be governed by the common law.
*77 Where, as in Indiana, the right to a change of venue is purely statutory, courts in granting a change of venue are governed by the provisions and prohibitions of the statute.
The statute here (§ 9-1305, supra) is plain and unambiguous; there is no room for construction and it must be given effect by the courts. Inheritance Tax Div. v. Estate of Callaway (1953), 232 Ind. 1, 5, 110 N.E.2d 903; Taelman v. Bd. of Fin. of School City of South Bend (1937), 212 Ind. 26, 33, 6 N.E.2d 557; State v. Martin (1923), 193 Ind. 120, 122, 139 N.E. 282, 26 A.L.R. 1386; Board of Election Com'rs. of Gibson County v. State, ex rel. Sides (1897), 148 Ind. 675, 678, 679, 48 N.E. 226; Crockett v. Calvert (1856), 8 Ind. 127, 131.
Second: The prohibition against more than one change from the county in a criminal proceeding is a part of the same proviso in § 9-1305, supra, as is prohibition against more than one change from the judge. This court has held that an accused is entitled to only one change from the judge, and the same rule must apply to that provision of the same section of the statute, which prohibits more than one change of venue from the county.
In considering a second change of venue from the judge, in Line v. State (1875), 51 Ind. 172, at page 173, this court said:
"The affidavit [for a change of venue], we think, fulfils the requisites of the statute; but the question arises, is the appellant entitled to two changes of venue in the same case for the same cause? We think not. The statute nowhere authorizes a second change of venue to the same party for the same cause. The court had no more power to grant a second change than it would have to grant a third, fourth, or fifth, or any number of changes. The ends of justice demand this construction of the statute; otherwise it would be in the power of a *78 defendant, charged with a criminal offense, to defeat a trial entirely."
The purpose of a limitation upon the number of changes was ably stated as early as 1849, in Price v. The State, 8 Gill. (Md.) 295, 307, 308, as follows:
"The sixth objection, that a second removal was not ordered by Anne Arundel county court, is not tenable. The words of the constitution are, that `a party presented or indicted in any of the county courts, may apply to the court before whom the indictment may be depending,' and have his case removed. There is nothing to indicate a purpose to authorise a second removal. The policy of the law is to have the cause tried in an `adjoining county.' This object may be defeated to the almost infinite delay of justice, and the great oppression of witnesses by adopting the argument of the counsel. If a second removal may be had, why not a third, a fourth, and as many removals as there are counties in the State, until, ultimately, the cause, if tried at all, is to be tried at some place the most remote and inconvenient to all who are witnesses or otherwise connected with it, and after a period of time in which the material testimony in the cause had been lost? The law seems to contemplate a condition of excitement in the immediate community, which has been the witness of an imputed crime, productive of feeling, either of prejudice or partiality, which might hazard a fair and impartial trial; but it has not assumed that such excitement will exist in all the adjacent counties, and reliance is, of necessity, had in the integrity and discretion of the court to select such an adjacent county, as is least likely to be influenced by any considerations of an extraneous character."
See also: People v. Touhy (1935), 361 Ill. 332, 197 N.E. 849, 856 (Cert. denied, 303 U.S. 657, 82 L.Ed. 1116, 58 S.Ct. 760); People v. Kelly (1936), 285 Ill. App. 57, 65, 1 N.E.2d 552; People v. Doss (1943), 382 Ill. 307, 46 N.E.2d 984, 987 (Appeal dismissed, 325 U.S. 835, 89 L.Ed. 1962, 65 S.Ct. 1202); State v. Wagner (1926), 311 Mo. 391, 279 S.W. 23, 26; Lee v. State (1933), 164 Md. 550, 165 Atl. 614, 615 (Cert. denied, 290 U.S. 639, 78 L. *79 Ed. 555, 54 S.Ct. 56); People v. Blanchard (1921), 70 Colo. 237, 199 Pac. 493.
Statutes that limit the number of changes of venue which a defendant may have in a criminal case are mandatory and must be strictly followed. State ex rel. Kealing v. Clay Circuit Court (1934), 207 Ind. 259, 262, 192 N.E. 423; See also: 104 A.L.R. Anno., Criminal Cases, p. 1496, 1497.
Third: Is the right to a change of venue granted by the Indiana Constitution? Article 1, Section 13 of the Indiana Constitution specifically provides that, "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; ...."
The language in this clause of Article 1, Section 13, supra, is plain and specific. It does not say that the accused may have a trial by an impartial jury in a county adjoining that in which the offense was committed. The phrase "by an impartial jury" cannot be separated from the remainder of the clause of which it is a part, but must be construed with and in relation to the other phrases "the right to a public trial" and "in the county in which the offense shall have been committed."
Section 13 of Article 1 sets forth five specific rights (1) the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; (2) to be heard by himself and counsel; (3) to demand the nature and cause of the accusation against him, and to have a copy thereof; (4) to meet the witnesses face to face; and (5) to have compulsory process for obtaining witnesses in his favor.
These rights are of equal rank and importance. They are not vested rights and any and all of them may be waived by an accused. The provision for trial "by *80 an impartial jury" is not a separate specific right, granted without limitation as to the place where it is to be exercised, but rather is restricted by the phrase which follows it, viz., "in the county in which the offense shall have been committed." The only function of these two phrases is to describe and define the kind of public trial to which the accused is entitled.
There is no language in § 13, or in any other provision of the Constitution, which specifically grants to an accused the right to a change of venue from the county in which the offense was committed, neither is there any language in this section, or any other part of the Constitution, from which the granting of such a change may be reasonably implied.
It is also clear from an examination of the Constitutional Debates that the Indiana Constitution provided only for a "public trial by an impartial jury, in the county in which the offense shall have been committed" and left to the Legislature any extension of such right to another county. Attempts were made in the Constitutional Convention to provide for a change of venue in criminal cases, and all such proposals were rejected.[2]
*81 This court has no right to read into the State Constitution a provision which is neither expressed nor fairly and reasonably implied.
In French v. State (1896), 93 Wis. 325, 67 N.W. 706, the Supreme Court of Wisconsin had before it a question similar to the one here presented.
Article 1, Section 7 of the Wisconsin Constitution provides "in all criminal prosecutions the accused shall enjoy the right ..., to a speedy public trial by an impartial jury of the county and district wherein the offense shall have been committed; ...."
At page 709 of 67 N.W., the court said:
"The right to a change of venue depends entirely upon the statute. It is not guaranteed by Const. art. 1, § 7, or any other provision of the constitution. As the right exists only by virtue of the statute, a change of venue can be had only upon the terms the statute prescribes." (Our italics.)
Fourth: Is the proviso in § 9-1305, supra, unconstitutional? The statute granting to a defendant a right to a change of venue is an implementation and an extension of his right to a public trial as prescribed in the first clause of Article 1, Section 13 of the Indiana *82 Constitution. The general rule as to the constitutionality of such a statute is stated in 56 Am. Jur., Venue, § 45, p. 50, as follows:
"But there is no fundamental constitutional objection to statutes which limit the number of changes of venue, and in many jurisdictions provisions of this kind have been enacted; such provisions have been almost universally considered mandatory in nature, and have been rigidly adhered to even in criminal cases, notwithstanding circumstances or reasons submitted which might otherwise clearly justify granting a change." See also: Patterson v. State (1937), 234 Ala. 342, 175 So. 371 (Cert. denied, 302 U.S. 733, 82 L.Ed. 567, 58 S.Ct. 121); Roberts Mining & Milling Co. v. Third Judicial Dist. Ct. (1935), 56 Nev. 299, 50 P.2d 512, 515; 22 C.J.S., Criminal Law, § 187, p. 300, supra.

In our opinion the proviso in § 9-1305, supra, limiting the right of an accused to one change of venue from the judge or from the county does not violate any of his constitutional rights.
Neither the trial court nor this court has any right to ignore the plain mandate of a constitutional statute.
The question before the LaPorte Circuit Court on a motion for a change of venue from that county was not a matter within the sound discretion of the court, but was one governed by statute. Defendant Johnson exhausted the remedy afforded him by the Legislature, when he was granted a change of venue from St. Joseph County. If he wants an extension of that right he must seek it in the Legislature and not in the courts. Courts do not sit as a superlegislature to overrule and set aside mandatory provisions of a valid statute.
There is no question of weighing the evidence presented at the hearing on the motion for a change of venue from LaPorte County involved in this case. The defendant having already had all the change of venue *83 which the statute permitted, the trial court had no jurisdiction to entertain or to grant the motion for a second or subsequent change.
Reliance is placed upon Crocker v. Justices of the Superior Court (1911), 208 Mass. 162, 94 N.E. 369, 21 Ann. Cas. 1061, supra, to support respondents' position herein. The sole question involved in that case was whether the Superior Court of Suffolk County had jurisdiction to order a change of venue from the county in which the indictment was returned, if, and when, satisfied that a fair and impartial trial could not be had in such county, in the absence of any statutory provision for a change of venue from the county in which the offense was committed. There was no question of a second change of venue from the county involved in that case. The principle of law announced there has no application where the right to a change of venue is governed by statute. The situation in the case at bar is essentially different from that in the Crocker case and the decision of the Massachusetts Supreme Court in that case lends no support to respondents' position here.
State ex rel. Parker v. Vosloh, Judge (1944), 222 Ind. 518, 54 N.E.2d 650, also relied upon to sustain respondents' position, involved solely the question of the qualification of a judge to sit in the administration of an estate in which he had a personal interest. No question of a second change from the judge was present or decided in that case. The fact that this court there held that no man should be a judge in his own cause is not authority for the granting of a second change of venue from the county to a defendant, contrary to a specific provision of the statute.
We are aware that the Legislature has provided for a change of venue from the judge where a new trial *84 is granted,[3] and for a change of venue from the county where a judgment is reversed on appeal;[4] however, neither of these situations is presented by the record here.
For the reasons above stated, the respondents herein are without authority to grant a second change of venue from the county.
The alternative writ heretofore issued is hereby made permanent.
Arterburn and Landis, JJ., concur.
Achor, C.J., concurs with opinion in which Arterburn, J., also concurs.
Emmert, J., dissents with opinion.

CONCURRING OPINION
ACHOR, C.J.
I concur in the majority opinion. Without regard to the character or extent of the right to change of venue (from the county) as it existed under the common law, in my opinion the Constitution of Indiana as adopted in 1851 (and which became effective in 1852) clearly, fully and finally declared the law on the subject of venue as it existed on that date. Article 1, § 13 of the Constitution of Indiana provides as follows: "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; ..." (Our italics.)
In my opinion, if a greater right to a change of venue existed previously under the common law, that right *85 was terminated by the above constitutional declaration which completely covered the field as to the venue of criminal actions. Therefore, the present right to change of venue (from the county) exists solely by virtue of statutes subsequently enacted, unless such right exists by reason of other provisions found in the Constitution of Indiana or the Constitution of the United States.
Clearly the right to a second subsequent change of venue does not exist by virtue of the statute. It specifically limits the right to one change, which the appellee had previously taken. § 9-1305, Burns' 1956 Repl. (Acts 1905, ch. 169, § 207, p. 584.)
The question with which we are now confronted is, do the provisions of the Constitution of Indiana or the Constitution of the United States grant a right of change of venue in the event it is judicially determined that an accused cannot have a fair and impartial trial in the county of the venue because of the odium or prejudice which exists in that county as to the accused?
The "due process" clause of the Constitution of the United States (Amend. 14, § 1) and our own Constitution (Art. 1, § 13) guarantees the right to trial by an impartial jury. This right has repeatedly been affirmed by the court. See Foreman v. State (1932), 203 Ind. 324, 180 N.E. 291; Hicks v. State (1927), 199 Ind. 401, 156 N.E. 548. However, it is significant that the above provision in the Constitution of Indiana guarantees only "an impartial jury, in the county in which the offense shall have been committed." Although it also guarantees the right to a "public trial," it does not guarantee that the public shall also be impartial or that an adverse odium or prejudice shall not attach to the accused in the minds of the general public of the county. Notwithstanding the fact that the trial court sustained the motion for change of venue because of such "odium and prejudice" in the county, we must *86 assume that in LaPorte County, which has a population of approximately 100,000, a jury of 12 people who were without prejudice could have been found, before whom to try this cause.
Here no attempt was made to determine whether or not an "impartial jury" could be found before whom to try the cause. Therefore, there was no breach of the accused's right to trial by an "impartial jury" within the guarantee of either the State or Federal Constitution. In the absence of such an attempt the action of the court, in direct violation of the statute, constituted an abuse of discretion.
Arterburn, J., concurs in this opinion.

DISSENTING OPINION
EMMERT, J.
I cannot concur in an opinion which holds a statute can nullify our constitutional guaranty for a fair trial, by prohibiting an accused, charged with murder in the first degree, from having a fair and impartial jury. With equal logic it could be held that the Legislature could nullify every provision of our Bill of Rights. If the Legislature has the constitutional right to prevent courts from affording a fair jury trial, then it has the right to usurp all the functions of courts, give the accused a drum-head trial, make a legislative finding he is guilty, and sentence him to death. Nor can I concur in the holding of the majority that Section 13 of Article I only guarantees an accused a fair trial in the county where the offense was committed. No accused becomes a constitutional outlaw when he takes a change of venue from the county where the indictment was returned.
On February 9, 1953, the Grand Jury of St. Joseph *87 County returned an indictment against Robert Lee Johnson charging him with the first degree murder of David R. Smith. From the pleadings here it appears that this was the second indictment returned against the accused, the first indictment having charged him with the same murder committed in the perpetration of a robbery. The venue of this prior cause was changed to the Marshall Circuit Court, where two trials were had, both of which resulted in a disagreement of the jury, after which this first indictment was dismissed prior to the return of the indictment in the cause now under consideration.
On motion of the accused the venue of the cause charged by the second indictment was changed to LaPorte County, where in circuit court he was tried by a jury, the trial lasting over a period of ten weeks, and on December 31, 1953, the jury returned a verdict finding him guilty of murder in the first degree as charged, and fixing his punishment at death.
The petition for the alternative writ here has as an exhibit thereto a certified copy of the various court proceedings, consisting of a transcript of 377 pages. The accused's motion for a new trial was duly filed within time, and alleged some 333 causes for a new trial, which extended through some 204 pages of the transcript. The court held a hearing on this motion for a new trial, and sustained it as to causes 328, 329 and 330, each of which charged misconduct of one of the jurors.
Thereafter the Honorable Jacob A. Fleishbein was appointed special judge in this cause, and before him as special judge, the accused, on October 4, 1955, filed an affidavit for change of venue from LaPorte County, the affidavit charging bias, prejudice and excitement of the citizens of the county against the defendant, and *88 that an odium attached to him and his cause of defense on account of local prejudice.
His affidavits contained other allegations charging that widespread publicity in various newspapers and on radio stations caused widespread prejudice against him; that the accused was a Negro but that the decedent, David R. Smith, was white and had many relatives in LaPorte County who were interested in his conviction, and they exerted a great influence over the inhabitants of the county; that after a new trial had been granted, a hearing was had on the petition of Floyd O. Jellison for his attorney fees, which was resisted by the Board of Commissioners of St. Joseph County, which hearing received much publicity, and was presented in a manner to imply the accused was responsible for the trial and costs to be paid by the taxpayers. There had also been an effort made to have the court supplant Mr. Jellison as pauper counsel for the accused after he had represented the accused on the first two trials. Thereafter at various times counsel for the accused filed four (4) supporting affidavits, to which, at various times the State filed six counter affidavits by the Prosecuting Attorneys of the 32nd Judicial Circuit and the 60th Judicial Circuit, and a Deputy Prosecuting Attorney of the latter circuit.
One of the supplemental affidavits of Floyd O. Jellison had attached as an exhibit thereto a news account published in a newspaper of substantial general circulation in LaPorte County, reporting that the attorney for the accused had offered to plead him guilty to manslaughter, which offer was rejected by the Prosecuting Attorney of the 60th Judicial Crcuit. No such offer had been made, although the State contended there had been a conversation between counsel for the State and the accused as to a possibility of a plea to a lesser *89 offense. The highly prejudicial effect of such a false report is self-evident.
The record which makes this case unique and distinguishes it from any criminal case cited in the majority opinion is that the trial judge did grant the second change. This was a finding that bias and prejudice did exist in LaPorte County. State ex rel. Schaaf v. Rose (1943), 222 Ind. 96, 51 N.E.2d 856. Nor did the accused seek a second change of venue as a matter of statutory right, but as a matter of constitutional right to a fair trial, and addressed the matter to the sound judicial discretion of the trial court. The uniform rule in Indiana has always been that where a change of venue from the county in a criminal case was a matter for the sound judicial discretion of the trial court, the denial of a change was a determination of an issue of fact and conclusive on review. Conrad v. State (1896), 144 Ind. 290, 295, 43 N.E. 221; Hauk v. State (1897), 148 Ind. 238, 243, 46 N.E. 127; Smith v. State (1917), 186 Ind. 252, 260, 115 N.E. 943; Scheerer v. State (1925), 197 Ind. 155, 159, 149 N.E. 892; Kennedy v. State (1935), 209 Ind. 287, 295, 196 N.E. 316; Vehling v. State (1935), 210 Ind. 17, 25, 196 N.E. 107; Sammons v. State (1935), 210 Ind. 40, 43, 199 N.E. 555; Anderson v. State (1941), 218 Ind. 299, 308, 32 N.E.2d 705; Rogers v. State (1948), 226 Ind. 539, 542, 82 N.E.2d 89. Although I would not approve of the rule as stated in Conrad v. State (1896), 144 Ind. 290, 297, 43 N.E. 221, supra, this court there said, "The man who presides over a judicial tribunal cannot, and should not, as a judge, exclude from his mind, in the exercise of a purely discretionary matter, depending upon a condition of public sentiment, all knowledge and all impressions coming to him as a man." It hardly makes for equal justice under law to hold that a denial of a change of venue is conclusive upon conflicting affidavits, *90 but if a trial court grants a change upon a showing of cause the Legislature can prohibit the trial court from doing right and justice regardless of bias and prejudice. "The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties. In other words, they have inherent power to do everything that is necessary to carry out the purpose of their creation." Knox County Council v. State ex rel. McCormick (1940), 217 Ind. 493, 498, 29 N.E.2d 405, 130 A.L.R. 1427.
There is no doubt that under the common law of England at the time of the American Revolution, the court of Kings Bench did exercise the right to change the venue in felony cases. 13 Maryland L. Rev. p. 347. In Crocker v. Justices of the Superior Court (1911), 208 Mass. 162, 94 N.E. 369, the court, after making an exhaustive review of the cases in England and this country, summarized the common law as follows: "The weight of opinion in those of the older States, whose judicial history is most nearly like our own, supports the view that it is an inherent power of common law courts to order a change for the purpose of securing an impartial trial." (Page 175.)[1]
Later in the same opinion the court declared:
"There can be no justice in a trial by jurors inflamed by passion, warped by prejudice, awed by violence, menaced by the virulence of public opinion or manifestly biased by any influences operating *91 either openly or insiduously to such an extent as to poison the judgment and prevent the freedom of fair action. Justice cannot be assured in a trial where other considerations enter the minds of those who are to decide than the single desire to ascertain and declare the truth according to the law and the evidence. A court of general jurisdiction ought not be left powerless under the law to do within reason all that the conditions of society and human nature permit to provide an unprejudiced panel for a jury trial. Without such a power it might become impossible to do justice either to the general public or to the individual defendant. Our system of government has created the executive, the legislative and the judicial, as three independent and co-ordinate departments, and in strong and comprehensive language has prohibited each from attempting to exercise the functions of either of the others `to the end that it may be a government of laws and not of men.' The courts of general jurisdiction under such a Constitution have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require." (Page 179.)
The logic of this reasoning applies with full force to the record in this original action.
Our Bill of Rights commands in general that
"Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Section 12, Article 1, Ind. Const.
Moreover, when an accused must face a charge of crime, the Forefathers provided more specific protections for every person, by requiring that,
"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; *92 to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Section 13, Article 1, Ind. Const.
"The people of this state have reserved the right in criminal prosecutions to a trial before an impartial jury. Bill of Rights, Art. I, § 13." Foreman v. State (1932), 203 Ind. 324, 329, 180 N.E. 291. "From such guarantee, it no doubt follows that the accused must be given every reasonable opportunity to procure a fair and impartial jury." Hicks v. State (1927), 199 Ind. 401, 402, 156 N.E. 548.
The reasoning of the majority opinion that appellant is not entitled to an impartial jury in LaPorte County because he waived the right to be tried in St. Joseph County when he took the change of venue as of right, is impossible to sustain under any constitutional principle. The rights set forth in Section 13 are separate, and a waiver of one does not waive any other. If the majority reasoning is sound, then the appellant lost his right to a public trial in LaPorte County. A star chamber proceeding with no jury would be authorized under such an unreasonable construction.
Nor does the Fourteenth Amendment tolerate a state giving an accused an unfair trial. "A fair trial in a fair tribunal is a basic requirement of due process." Re Murchison (1955), 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942, 946. From the uncontradicted record in this case it is quite apparent that the trial judge thought there had been an "out-of-court" campaign to convict the appellant, which had caused a situation to develop whereby it would be impossible to obtain a fair and impartial jury in LaPorte County. Unless this court is going to make one kind of law for the state, and another for the accused, we have no busines in holding *93 the trial judge had no constitutional right and duty to afford the accused due process of law. All that was missing in this record was the threat of mob violence. See Shepherd v. Florida (1951), 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740. But there can be a lynching in the minds of the jurors with just as deadly effect as a lynching in fact. "`Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests, and procedure is not chained to any ancient and artificial formula.' United States v. Wood, 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78. But, deeply embedded in the right to a fair and impartial trial is the requirement that the jury of twelve men, chosen to sit in judgment, shall have no fixed opinion concerning the guilt or innocence of the one on trial, and that their ultimate verdict shall be based upon the facts as they are submitted to them by the court, under its instructions and superintendence. Anything less is a farce and a travesty upon justice." Baker v. Hudspeth (1942), 129 F.2d 779, 782.
If the right to a change of venue from the county is wholly statutory, then the right to a change of judge is merely statutory. Neither the ancient common law nor the late Indiana cases countenance any such construction as that on the right to a change of venue from the judge.
"No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord Coke has laid it down that `even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself; for jura naturae sunt immutabilia, and they are leges legum.'" 2 Cooley, Constitutional Limitations (8th Ed.), p. 870. Lord Coke's rule was approved by this court in State *94 ex rel. Gary Bar Assn. et al. v. Dudak (1955), 234 Ind. 413, 127 N.E.2d 522, and State ex rel. Parker v. Vosloh, Judge (1944), 222 Ind. 518, 520, 54 N.E.2d 650.[2] See also Tumey v. Ohio (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749. In the Vosloh case this court squarely held the right to a change of venue from the judge was not wholly statutory. There is no statute giving a change of venue from the judge in the entire administration of an estate. State ex rel. Stockton v. Leopold (1949), 227 Ind. 426, 431, 86 N.E.2d 530. Yet in the Vosloh case, supra, this court emphatically held the trial judge, who was interested in the administration of an estate pending before him, should grant an affidavit for a change of venue from him for the entire administration of the estate. If Lord Coke's rule is still the law, a statute prohibiting the change would have been unconstitutional.
Both § 9-1305 and § 9-1318, Burns' 1942 Replacement, prohibit an accused from having more than one change of venue from the judge. But suppose it is discovered that the special judge is closely related to the victim, or that he has a financial interest in property involved in the crime charged. If the right to a change of venue is purely statutory, the accused would be absolutely prohibited from taking a second change. But not since Lord Coke's day has this been the law of the land in any Anglo-Saxon jurisdiction.
Nor is it any answer to the rule of disqualification to argue that this court would not presume a special *95 judge would act when in fact he was disqualified. It did happen in State ex rel. Avalon Apartments Company, Inc. v. Sammons (1942), 220 Ind. 319, 38 N.E.2d 846, 42 N.E.2d 626. When a judgment comes before this court for a review the presumption is the judgment was had by due process of law and the record is free of error. But this presumption must yield to the record, and if the same case comes before this court more than once, in none is there a conclusive presumption no error was committed. If the Legislature should attempt to enact such a conclusive presumption it would be unconstitutional and void as an attempt by the Legislative Department to exercise judicial functions, as well as a denial of due course of law, and the abolishment of our jurisdiction to review for error.
An examination of the cases relied on by the majority opinion discloses that in none did a trial judge find there was such prejudice and excitement existing in the county that a change of venue from the county should be granted to give the accused his constitutional right to a fair and impartial trial. In many of them no motion for a change of venue was filed.[3] Some only involve civil issues.[4] In Duggins v. State (1879), 66 Ind. 350, this court held appellant was entitled to a *96 special judge even though a judge pro tempore had been succeeded by a newly appointed presiding judge. In Line v. State (1875), 51 Ind. 172, appellant sought a second change of judge as of right without any showing in fact that a special judge was incompetent to afford a fair trial. If the special judge had as a matter of fact found he was incompetent and the state had objected, the case might be some precedent analogous to the issue involved in the matter at bar.
The texts cited in the majority opinion are no more persuasive than the cases on which the texts have been based. In Stamp v. Commonwealth (1923), 200 Ky. 133, 253 S.W. 242, the court held it was no abuse of discretion for the trial judge to refuse a motion for change of venue from the county for the second trial after the cause had been reversed. The statement of the court that the right was statutory is pure dictum and fails to consider the right of an accused to a fair trial under the due process clause and under the Kentucky Constitution. The language in French v. State (1896), 93 Wis. 325, 335, 67 N.W. 706, involves an attempt by the accused to prevent the case from going out of the county. That court also failed to consider the constitutional right to a fair trial before an impartial jury. Roberts Mining & Milling Co. v. Third Judicial District Court (1935), 56 Nev. 299, 50 P.2d 512, involved the trial of civil issues. The affidavit *97 for the change was only general in form, the trial judge did not find as a fact he was disqualified, and the language must be limited to the facts decided. In People ex rel. Wooten v. Blanchard, Justice of the Peace (1921), 70 Colo. 237, 199 Pac. 493, the court only decided the accused did not have a right to more than one change of judge as of right. Nor was there any finding by the trial judge that he was incompetent in State v. Wagner (1925), 311 Mo. 391, 279 S.W. 23.
The Illinois cases furnish no precedent for deciding the facts in the cause at bar. In People v. Touhy (1935), 361 Ill. 332, 346, 197 N.E. 849, the court held the matter of prejudice was a question of fact to be determined by the trial judge, which is what is contended by the accused in this case. In People v. Kelly (1936), 285 Ill. App. 57, 65, 1 N.E.2d 552, the defendant was not trying to secure an impartial judge but was attempting to prevent a trial before any judge. In People v. Doss (1943), 382 Ill. 307, 46 N.E.2d 984, a charge of criminal contempt by a newspaper was involved. There had already been two changes of judge and the Supreme Court had appointed a third judge, and there was no evidence that the appointee by the Supreme Court was biased and prejudiced in any way whatever.
The Maryland cases so often cited to sustain inaccurate language by the text writers were decided under the peculiar provision of the Maryland Constitution which was often changed, sometimes granting, sometimes denying a change of venue from the county as of right. Constitutional Limitations on Change of Venue in Criminal Cases, Md. Law Rev. (1953), Vol. 13, p. 344, et seq. In none of the cases did the Court of Appeals of Maryland consider the right of an accused *98 to be tried where the offense was committed, for by implication the Attorney General was granted the right to a change of venue from the county where the indictment was returned. Price v. State (1849), 8 Md. 295; Fountain v. State (1919), 135 Md. 87, 108 Atl. 473; and Lee v. State (1933), 164 Md. 550, 165 Atl. 614, involve the peculiar constitutional provisions of Maryland. The affidavit in the latter case prayed a change to a county "where there are no Jim Crow or segregation regulations against negroes." This of itself would be insufficient to show such bias and prejudice, passion and excitement, or that the accused could not have a fair trial in Baltimore County, and the trial judge made no finding that he could not obtain a fair jury in Baltimore County, as is the case at bar.
The fact that the Supreme Court of the United States denied certiorari in Patterson v. State (1937), 302 U.S. 733, 58 S.Ct. 121, 82 L.Ed. 567 (Patterson v. State (1937), 234 Ala. 342, 175 So. 371), has nothing to do with the issues in the matter at bar. Patterson was one of the defendants in the notorious Scottsboro cases. See Powell v. Alabama (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. One prosecutrix admitted she lied on the first trial when the defendants were condemned to death. None is now in prison. See "They Shall Be Free" by Allen K. Chalmers. When the Supreme Court denied certiorari it only held that Patterson had not been denied equal protection under the law, and therefore the cause could not be removed to a Federal District Court for trial.[5]
The modern day facilities for the rapid and complete dissemination of news by the press, radio and television *99 have increased the possibilities that it may be difficult to obtain a fair and impartial jury after a cause has once been tried. The General Assembly of Indiana has provided by statute that after a cause has been reversed and remanded a change of venue from the county may be had as of right. Section 2-1432, Burns' 1946 Replacement (Supp.) [Acts 1947, Ch. 186, § 1].[6]
If the conviction in the LaPorte Circuit Court had been appealed and we had reversed it with an order for a new trial, he would have been entitled to a change of venue from LaPorte County as of right. As far as the substantial rights of the accused are concerned, it could make no difference to him whether our court or the trial court grants his motion for a new trial. When the General Assembly enacted Ch. 186 of the 1947 Acts, it recognized the necessity for affording an accused a fair trial after a reversal, and presumably it took cognizance of today's rapid dissemination of news when it granted the change as of right. But in the matter at bar we are not dealing with a possibility, but with a conclusive finding that there was such bias, prejudice, passion and excitement, that the accused could not have a fair trial in LaPorte County.
The Forefathers sought to guarantee a fair trial for an accused. If the trier of the facts be a jury, it is just as prejudicial to the rights of the accused if he cannot obtain a fair and impartial jury trial due to the excitement and prejudice against the accused in the county as it would be for the presiding judge to have a personal or financial interest in the outcome of the prosecution. It is beyond the power of the Legislature to say to the courts an accused can have one *100 change of venue from a county when prejudice and excitement exists against him, but after the first change is granted, and the accused has been convicted after a long trial which received much publicity and notoriety throughout the county, and an able and experienced trial judge found such prejudice and excitement did then exist, he then is not entitled to an impartial jury in another forum in which he would again be placed on trial for his life.
If the State can prove the accused guilty beyond a reasonable doubt in LaPorte County, it can do so in Porter County on a retrial. The only inconvenience to the State is going a few miles farther to Porter County. It ought not ask, nor should this court countenance a holding that an accused be put on trial for his life in a county where it has been adjudicated of record he cannot have a fair and impartial trial due to the excitement and prejudice against him. I would vacate the writ.
NOTE.  Reported in 138 N.E.2d 875.
NOTES
[1] Acts 1881 (Spec. Sess.), ch. 38, § 255, p. 240, being § 2-1401, Burns' 1946 Repl.; Acts 1881 (Spec. Sess.), ch. 38, § 256, p. 240, being § 2-1406, Burns' 1946 Repl.; Acts 1881 (Spec. Sess.), ch. 38, § 256, p. 240, being § 2-1407, Burns' 1946 Repl.; Acts 1927, ch. 132, § 10, p. 411, being § 9-1301, Burns' 1956 Repl.; Acts 1905, ch. 169, § 207, p. 584, being § 9-1305, Burns' 1956 Repl.
[2] Article 1, § 13 of the Indiana Constitution was reported to the Constitutional Convention by the Committee on Rights and Privileges, in the following form:

"Sec. 5. In all criminal prosecutions the accused shall have public trial by an impartial jury of his peers, in the county in which the offence shall have been committed; he shall have the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."
The section as reported was subsequently amended on second reading by striking out the words "of his peers" and inserting in lieu thereof the phrase "composed of a jury of the county." This amendment as originally proposed read "composed of a jury of the State" which was amended by substituting the word "county" for the word "state."
Debates in Indiana Convention, 1850, Vol. 2, p. 1379.
An amendment was then proposed to insert after the word "committed" the following: "Unless for good cause shown, the court may direct a change of the place of trial to some other county." This proposed amendment was tabled.
Convention Journal, 1850, p. 572;
Debates in Indiana Convention, 1850, Vol. 2, p. 1379, supra.
It was also proposed to amend the section by adding a provision authorizing a change of venue in criminal prosecutions upon the application of the accused. However, no such amendment was ever actually drafted and it does not appear in the report of the Committee on Revision.
Convention Journal, 1850, pp. 866-868.
See also: Page 872 where the section first appears as Section 13 of Article 1.
An effort was also made to have the Committee on Criminal Law inquire into the expediency of restraining the right of criminals to a change of venue from the county in which the offense was committed, and a resolution to that effect was voted down by the Convention.
Convention Journal, 1850, pp. 145-146.
[3] Acts 1937, ch. 221, § 1, p. 1098, being § 2-1429, Burns' 1946 Replacement.
[4] Acts 1947, ch. 186, § 1, p. 620, being § 2-1432, Burns' 1955 Cum. Supp.
[1] See also Matter of Murphy v. Supreme Court (1945), 294 N.Y. 440, 63 N.E.2d 49; State ex rel. Ricco v. Biggs (1953), 198 Or. 413, 255 P.2d 1055; State v. Woods (1922), 92 W. Va. 331, 115 S.E. 470; 22 C.J.S. 302, § 189.
[2] In State ex rel. Purcell v. Circuit Court (1950), 228 Ind. 410, 92 N.E.2d 843, this court held that a judge of a circuit court who was biased and prejudiced against the prosecuting attorney acted beyond his jurisdiction in making an ex parte order appointing a special prosecutor to conduct the grand jury investigation of the regularly elected, qualified and acting prosecuting attorney of the circuit.
[3] McCoy v. Payne (1879), 68 Ind. 327, 336 [action to collect debt from decedent without administration]; Atkinson v. Disher (1917), 177 Ind. 665, 98 N.E. 807 [appeal from order of county commissioners denying twelve (12) liquor licenses]; Southern R. Co. v. Howerton (1914), 182 Ind. 208, 105 N.E. 1025, 106 N.E. 369 [action under federal employees liability act]; Connell v. State ex rel. Thompson (1924), 196 Ind. 421, 144 N.E. 882, 148 N.E. 407 [quo warranto to try title to office of city councilman]; Nealis, Administrator v. Dicks (1880), 72 Ind. 374, 379 [action for fraud in obtaining default judgment]; Cloud v. Bruce (1878), 61 Ind. 171 [action to quiet title]; Sopher v. State (1907), 169 Ind. 177, 81 N.E. 913 [prosecution for maintaining liquor nuisance].
[4] State ex rel. Young v. Niblack (1951), 229 Ind. 509, 99 N.E.2d 252 [action for declaratory judgment]; Michigan Mutual Life Insurance Company v. Naugle (1891), 130 Ind. 79, 29 N.E. 393 [action on insurance policy]; Millison v. Holmes (1848), 1 Ind. 45 [trespass quare clausum fregit]; State ex rel. Mabbitt v. Smith (1876), 55 Ind. 385, 386 [bastardy]; Weakley v. Wolf (1897), 148 Ind. 208, 47 N.E. 466 [election contest]; Daniels, Admx. v. Bruce (1911), 176 Ind. 151, 95 N.E. 569 [action to sell real estate to make assets for the payment of debt]; Stair v. Meissel (1934), 207 Ind. 280, 192 N.E. 453 [action to foreclose chattel mortgage]; State ex rel. Neal v. Superior Court of Marion County (1931), 202 Ind. 456, 174 N.E. 732 [receivership]; State ex rel. Kealing v. Clay Circuit Court (1934), 207 Ind. 259, 192 N.E. 423 [civil action against city of Brazil].
[5] See Steele v. Superior Court of California in and for the City and County of San Francisco (1948), 164 F.2d 781, Certiorari denied 1948, 333 U.S. 861, 92 L.Ed. 1140, 68 S.Ct. 739.
[6] Since 1907 the statute has given the right to a change of judge after a reversal. Section 2-1404, Burns' 1946 Replacement. See also § 2-1429, Burns' 1946 Replacement.